**EXHIBIT A**

Small Claims Form 3.6: *Original Notice and Petition for Forcible Entry and Detainer*

In the Iowa District Court for _____ Linn _____ County

| Plaintiff(s) | **Original Notice and Petition** |
|---|---|
| Dennis Johnson | **for Forcible Entry and Detainer** |
| (Name) | **(Iowa Code chapter 648)** |
| 3200 5th Ave., Marion, IA 52302 | |
| (Address) | |
| | |
| (Name) | |
| | |
| (Address) | |
| vs. | |
| Defendant(s) | |
| VB Acquisitions LLC d/b/a Vertical Bridge | |
| (Name) | If you need assistance to participate in court due to a disability, call the disability coordinator (information at https://www.iowacourts.gov/for-the-public/ada/). Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.** |
| 22 W.Atlantic Ave Ste 310 Delray Beach FL33444 | |
| (Address) | |
| | |
| (Name) | |
| | |
| (Address) | |

To Defendant(s):

**1. You are notified** that Plaintiff(s) demand(s) from you possession of (state exact address of real property): 3200/3300 Fifth Ave., Marion, IA 52302

because (state basis of demand):

You have failed to comply with a 30-Day Notice of Termination terminating a month-to-month lease and a subsequent Notice to Quit - Iowa Code Section 648.1(2).

**2. Hearing is set for** the date, time, and court location listed on the last page of this Original Notice and Petition. The court will electronically record the hearing. If either party desires that a certified court reporter report the hearing, that party must arrange and pay for the costs of reporting. **Failure to appear at the hearing may result in judgment entered against you for possession of the property and court costs.**

**Plaintiff(s):** The court shall set the date of hearing to occur within **8 days** from the filing date of the Original Notice unless you check the box below:

☒ Plaintiff(s) request(s) or consent(s) to the court setting the date of hearing to occur no later than **15 days** from the filing of the Original Notice.

| /s/ Austin G. Collins | /s/ |
|---|---|
| Filing Plaintiff or Attorney | Second Plaintiff, if applicable |
| Klinger, Robinson & Ford, L.L.P. | |
| Law firm, or entity for which filing is made, if applicable | Law firm, or entity for which filing is made, if applicable |
| 401 Old Marion Rd. NE, Cedar Rapids | |
| Mailing address | Mailing address |
| 319-395-7400 | |
| Telephone number | Telephone number |
| acollins@krflawfirm.com | |
| Email address | Email address |
| | |
| Additional email address, if applicable | Additional email address, if applicable |

Small Claims Form 3.6, page 1 of 2*
*Upon electronic filing, a clerk's signature page will be attached to this document as page 2.

# Iowa Judicial Branch

*Case No.*  **SCSC281043**

*County*  **Linn**

*Case Title*  DENNIS JOHNSON V VB ACQUISITIONS LLC

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

---

*Scheduled Hearing :*
FORCIBLE ENTRY
10/15/2025 09:30:00 AM
duration - 15 minutes
Linn County Courthouse, 3rd Avenue Bridge, Cedar Rapids, IA

---

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(319) 398-3920** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **10/01/2025 01:29:36 PM**



*District Clerk of Court or/by Clerk's Designee of* Linn                    *County*
**/s/ Ann Scherf**

## 30-DAY NOTICE OF TERMINATION OF LEASE

TO:          Vertical Bridge

ADDRESS:   3200/3300 Fifth Avenue, Marion, IA 52302

               VB Site ID US-IA-5322
               Verizon Site ID 5000090615

Your Lease Agreement for the above-described premises, leased from Sublessor Dennis Johnson pursuant to a certain Option and Land Sublease Agreement dated February 13, 1995 which was purportedly assigned to you by the original Sublessee, Bell Atlantic Mobile Systems LLC d/b/a Verizon Wireless, is hereby terminated, effective September 1, 2025 (the "Termination Date"), which is the day immediately following the end of the next monthly period, giving you at least 30 days' notice from the date this notice is served on you.

The Sublessor demands you vacate the premises by the Termination Date.

If you fail to vacate by that date, the Sublessor intends to pursue judicial remedies under State law for your eviction.

                                   Dennis Johnson, Sublessor

                     By: _____
                     Austin G. Collins, Attorney for Sublessor
                     KLINGER, ROBINSON & FORD, L.L.P.
                     401 Old Marion Road NE, P.O. Box 10020
                     Cedar Rapids, IA 52402
                     Phone: (319) 395-7400

**DENNIS JOHNSON**

Case No.:

Plaintiff/Petitioner

vs.

**VERTICAL BRIDGE**

Defendant/Respondent

**AFFIDAVIT OF SERVICE OF**
**30-DAY NOTICE OF TERMINATION OF LEASE**

Received by **Hemant Kumar**, on the **23rd day of July, 2025 at 10:48 AM** to be served upon **VB Acquisitions, LLC** at **22 W Atlantic Ave Ste. 310, Delray Beach, Palm Beach County, FL 33444**.
On the **25th day of July, 2025 at 1:15 PM**, I, **Hemant Kumar**, **SERVED VB Acquisitions, LLC** at **22 W Atlantic Ave Ste. 310, Delray Beach, Palm Beach County, FL 33444** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Janette Revira**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Janette Revira who identified themselves as the corporate officer with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 35-45 years of age, 5'4"-5'6" tall and weighing 140-160 lbs with an accent.**

Service Fee Total: **$75.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _Hemant Kumar_        N/A        07 | 25 | 2025
Hemant Kumar        Server ID #        Date

Notary Public: Subscribed and sworn before me on this _25_ day of _July_ in the year of 20_25_
Personally known to me _____ or _✓_ identified by the following document: _FL D/LIC._

_Syed Akhtar_

Notary Public (Legal Signature)

Number/Reference: _597545_
Type: _Notary Public._
Notary Public for State of: _Florida_
Commission Expiration: _09/30/2028_

Notary Public State of Florida
Syed Nadeem Akhtar
My Commission HH 597545
Expires 9/30/2028

REF: **hr-17881**

## THREE DAY NOTICE TO QUIT

TO:        Vertical Bridge

You and each of you are hereby notified that the undersigned now demands that you vacate and surrender to said undersigned within three (3) days from the date of service of this notice upon you, the possession of the premises now occupied by you and described as follows:

ADDRESS:    3200/3300 Fifth Avenue, Marion, IA 52302

                 VB Site ID US-IA-5322
                 Verizon Site ID 5000090615

for the reason that:

YOU HAVE FAILED TO VACATE THE PREMISES AFTER DUE AND TIMELY SERVICE OF A 30-DAY NOTICE OF TERMINATION OF LEASE TERMINATING YOUR MONTH-TO-MONTH TENANCY OF THE PREMISES EFFECTIVE SEPTEMBER 1, 2025, AND ARE THEREFORE HOLDING OVER AFTER TERMINATION OF THE LEASE.

You will therefore take notice and govern yourselves accordingly.

Dennis Johnson, Sublessor

By:   _/s/ Austin G. Collins_
Austin G. Collins, Attorney for Sublessor
KLINGER, ROBINSON & FORD, L.L.P.
401 Old Marion Road NE, P.O. Box 10020
Cedar Rapids, IA 52402
Phone: (319) 395-7400

§648.3 Iowa Code

NOTE:  If the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., applies to this communication, attach Form No. 172, Notice of Validation of Debt.

| Dennis Johnson | | Case No.: | **XX** |
| --- | --- | --- | --- |
| | Plaintiff/Petitioner | | |
| vs. | | | |
| **Vertical Bridge** | | AFFIDAVIT OF SERVICE OF | |
| | Defendant/Respondent | **THREE DAY NOTICE TO QUIT** | |

Received by **Matthew Jacobs**, on the **22nd day of September, 2025 at 4:46 AM** to be served upon **VB Acquisitions, LLC** at **22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444**.
On the **22nd day of September, 2025 at 11:10 AM**, I, **Matthew Jacobs**, SERVED **VB Acquisitions, LLC** at **22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Lindsy Pierre**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Lindsy Pierre who identified themselves as the office administrator with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired black female contact 25-35 years of age, 5'4"-5'6" tall and weighing 120-140 lbs.**

Service Fee Total: **$75.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____     N/A        9-29-2~

     Matthew Jacobs           Server ID #          Date

Notary Public: Subscribed and sworn before me on this ___ day of _____ in the year of 20___ Personally known to me _____ or _____ identified by the following document:

                                    Number/Reference: _____
                                          Type: _____
_____    Notary Public for State of: Florida
Notary Public (Legal Signature)      Commission Expiration: Sept 20, 2027

JANICE COOPER
Notary Public - State of Florida
Commission # HH 446300
My Comm. Expires Sep 20, 2027

IN THE IOWA DISTRICT COURT IN AND FOR LIN COUNTY

| | | |
|---|---|---|
| DENNIS JOHNSON | ) | |
| 3200 5th Avenue | ) | CASE NO. SCSC281043 |
| Marion, IA 52302 | ) | |
| | ) | **ENTRY OF APPEARANCE** |
| Plaintiff. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VB ACQUISITIONS LLC d/b/a | ) | |
| VERTICAL BRIDGE | ) | |
| 22 W. Atlantic Avenue, Suite 310 | ) | |
| Delray Beach, FL 33444 | ) | |
| | ) | |
| Defendant. | ) | |

Ryann A. Glenn of Husch Blackwell LLP hereby enters her appearance in the above-captioned action as counsel of record for Defendant VB Acquisitions LLC d/b/a Vertical Bridge.

Dated this 9th day of October 2025.

> **VB ACQUISITIONS LLC d/b/a**
> **VERTICAL BRIDGE, Defendant.**
>
> By:   */s/ Ryann A. Glenn*
> Ryann A. Glenn  (AT0010530)
> Husch Blackwell LLP
> 14606 Branch St., Ste. 200
> Omaha, NE  68154
> Telephone: (402) 964-5000
> Fax: (402) 964-5050
> ryann.glenn@huschblackwell.com
>
> and
>
> Jacob Harris (WI 1095224)
> (*pro hac vice forthcoming*)
> Husch Blackwell LLP
> 33 East Main Street, Suite 300
> Madison, WI 53703
> Telephone: (608) 255-4440
> Fax: (608) 258-7138
> Jacob.harris@huschblackwell.com

1

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October 2025, a true and correct copy of the foregoing was e-filed via the Court's EDMS System upon all counsel of record.

*/s/ Ryann A. Glenn*

2

HB: 4928-3121-9057.1

**Rule 31.25—Form 1:** *Application for Admission Pro Hac Vice--District Court*

## Iowa District Court for LINN County

*County where your case is filed*

DENNIS JOHNSON

Case no. SCSC281043

**Plaintiff(s)**
*Full name: first, middle, last*

vs.

VB ACQUISITIONS LLC

d/b/a VERTICAL BRIDGE

**Defendant(s)**
*Full name: first, middle, last*

**Application for Admission
Pro Hac Vice--District Court**
Iowa Court Rule 31.14

### 1. Application

The undersigned seeks permission to appear pro hac vice in the above-captioned proceeding.
*Applicant must complete all of the following:*
If this matter involves review of an agency action, did the applicant seek admission pro hac vice in the proceedings below? ☐ Yes ☐ No
*If yes, attach copies of all related documents.*

a. Applicant's full name, residential address, email address, and business address.

| Jacob B. Harris | jacob.harris@huschblackwell.com | | |
|---|---|---|---|
| *Full name: first, middle, last* | *Email address* | | |
| 2309 West Lawn Avenue | Madison | WI | 53711 |
| *Mailing address* | *City* | *State* | *ZIP code* |
| 33 E. Main Street, Suite 300 | Madison | WI | 53703 |
| *Business address* | *City* | *State* | *ZIP code* |

b. The name, address, and telephone number of each client to be represented.

VB Acquisitions LLC d/b/a Vertical Bridge, 22 W. Atlantic Ave., Suite 310
Delray Beach, FL 33444

c. The courts before which the applicant has been admitted to practice and the respective periods of admission and any jurisdiction in which the out-of-state lawyer has been licensed to practice as a foreign legal consultant and the respective period of licensure.

Western District of Wisconsin - 10/28/2014; Eastern District of Wisconsin - 3/12/2015
State of Wisconsin - 6/30/2014; State of Illinois - 11/6/2014
US Court of Appeals - 7th Cir - 2/17/2023; US Court of Appeals - 8th Cir. - 4/22/2022

d. Has the applicant ever been denied admission pro hac vice in this state?

☐ Yes ☒ No

Rule 31.25—Form 1: *Application for Admission Pro Hac Vice--District Court*, continued

*If yes, on a separate page specify the caption of the proceedings, the date of the denial, and what findings were made. Attach copies of all related documents.*

e. Has the applicant ever had admission pro hac vice revoked in this state?

☐ Yes ☒ No

*If yes, on a separate page specify the caption of the proceedings, the date of the denial, and what findings were made. Attach copies of all related documents.*

f. Has the applicant ever been denied admission in any jurisdiction for reasons other than failure of a bar examination? ☐ Yes ☒ No

*If yes, on a separate page specify the caption of the proceedings, the date of the denial, and what findings were made. Attach copies of all related documents.*

g. Has the applicant ever been formally disciplined or sanctioned by any court in this state? ☐ Yes ☒ No

*If yes, on a separate page specify the nature of the allegations, the name of the authority bringing such proceedings, the caption of the proceedings, the date filed, what findings were made, and what action was taken in connection with those proceedings. Attach copies of all related documents.*

h. Has the applicant ever been the subject of any injunction, cease-and-desist letter, or other action arising from a finding that the applicant engaged in the unauthorized practice of law in this state or elsewhere? ☐ Yes ☒ No

*If yes, on a separate page specify the nature of the allegations, the name of the authority bringing such proceedings, the caption of the proceedings, the date filed, what findings were made, and what action was taken in connection with those proceedings. Attach copies of all related documents.*

i. Has any formal, written disciplinary proceeding ever been brought against the applicant by a disciplinary authority or unauthorized practice of law commission in any other jurisdiction within the last five years? ☐ Yes ☒ No

*If yes, on a separate page specify as to each such proceeding: the nature of the allegations, the name of the person or authority bringing such proceedings, the date the proceedings were initiated and finally concluded, the style of the proceedings, and the findings made and actions taken in connection with those proceedings. Attach copies of all related documents.*

j. Has the applicant ever been placed on probation by a disciplinary authority in any other jurisdiction? ☐ Yes ☒ No

*If yes, on a separate page specify the jurisdiction, caption of the proceedings, the terms of the probation, and what findings were made. Attach copies of all related documents.*

k. Has the applicant ever been held formally in contempt or otherwise sanctioned by any court in a written order in the last five years for disobedience to the court's rules or orders? ☐ Yes ☒ No

*If yes, on a separate page specify the nature of the allegations, the name of the court before which such proceedings were conducted, the date of the contempt order or sanction, the caption of the proceedings, and the substance of the court's rulings. Attach to this application a copy of the written order or a transcript of the oral ruling and other related documents.*

l. Has the applicant filed an application to appear pro hac vice in this state within the preceding two years? ☐ Yes ☒ No

Rule 31.25—Form 1: *Application for Admission Pro Hac Vice--District Court*, continued

*If yes, on a separate page list the name and address of each court or agency and a full identification of each proceeding in which an application was filed, including the date and outcome of the application. Attach copies of all related documents.*

m. The applicant acknowledges familiarity with the rules of professional conduct, the disciplinary procedures of this state, the standards for professional conduct, the applicable local rules, and the procedures of the court before which the applicant seeks to practice. ☒ Yes ☐ No

n. List the name, address, telephone number, email address, and personal identification number of an in-state lawyer in good standing of the bar of this state who will sponsor the applicant's pro hac vice request.

| Ryann A. Glenn | AT0010530 | ryann.glenn@huschblackwell.com |
|---|---|---|
| *Lawyer's name* | *PIN* | *Email address* |

| 14606 Branch St., Suite 200 | Omaha | NE | 68154 |
|---|---|---|---|
| *Lawyer's address* | *City* | *State* | *ZIP code* |

o. The applicant acknowledges that service upon the in-state attorney in all matters connected with the proceedings will have the same effect as if personally made upon the applicant. ☒ Yes ☐ No

p. If the applicant has appeared pro hac vice in this state in five proceedings within the preceding two years, the applicant must, on a separate attached page, provide a statement showing good cause why the applicant should be admitted in the present proceeding.

q. On a separate attached page the applicant must provide any other information the applicant deems necessary to support the application for admission pro hac vice.

r. Has the applicant registered with the office of professional regulation and paid the fee as required by Iowa Court Rule 31.14(11) within five years of the date of this application? ☒ Yes ☐ No

**Lawyer's Oath and Signature and Certificate of Service on next page**

Rule 31.25—Form 1: *Application for Admission Pro Hac Vice--District Court*, continued

## 2. Oath and Signature

I, Jacob B. Harris _____, have read this Application, and I certify under
*Print your name*

penalty of perjury and pursuant to the laws of the State of Iowa that the preceding is
true and correct.

Signed on:   October _____ 9 _____, 20 25     [signature]
*Signed on:*   *Month*   *Day*   *Year*     *Your signature\**

33 E. Main Street, Suite 300 _____   Madison _____   WI ____   53701 ____
*Mailing address*   *City*   *State*   *ZIP code*

( 608 ) 234-6019 _____   jacob.harris@huschblackwell.com   _____
*Telephone number*   *Email address*   *Additional email address, if applicable*

\*  *If filing in paper, you must handwrite your signature on this form.  If filing electronically, you may handwrite your signature on the form, scan the form, and then file it electronically, or, you may affix a digitized signature and file the form electronically.*

### Certificate of Service

The undersigned certifies a copy of this application was served on the following parties:

Austin G. Collins, Klinger, Robinson & Ford, L.L.P.
401 Old Marion Rd. NE
Cedar Rapids, IA 52402

on the 9 _____ day of October _____, 20 25 _____
*Month*   *Year*

by ☐ Personal delivery   ☒ Deposit in the U.S. mail

*Kari Thorpe*
*Signature of server*

IN THE IOWA DISTRICT COURT IN AND FOR LINN COUNTY

| DENNIS JOHNSON, | CASE NO. SCSC281043 |
|---|---|
| Plaintiff, | **MOTION FOR REMOTE TESTIMONY** |
| vs. | |
| VB ACQUISITIONS LLC d/b/a VERTICAL BRIDGE, | |
| Defendant. | |

COMES NOW, the Plaintiff, Dennis Johnson, by and through his attorney, Austin G. Collins of Klinger, Robinson & Ford, L.L.P., and for his Motion for Remote Testimony respectfully states as follows:

1.　This matter is currently set for a hearing on Plaintiff's Petition for Forcible Entry and Detainer on October 15, 2025.

2.　Plaintiff intends to call as a witness Attorney Shival S. Bushan, an attorney practicing in California who represented Plaintiff in the negotiation and performance of the lease at issue.

3.　Due to scheduling and the nature of the case, Mr. Bushan is not able to testify at the hearing in person. Plaintiff therefore moves that he be allowed to testify by telephonic or video means.

WHEREFORE, the undersigned respectfully prays that at the time of hearing the Court allow Attorney Shival S. Bushan to testify by means of telephonic or video appearance, and for such other and additional relief as the Court deems just and equitable in the premises.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument
was served on all parties of record herein through
EDMS on October 13, 2025.

Signature: */s/ Austin G. Collins*

*/s/ Austin G. Collins*

Austin G. Collins   AT0014208
KLINGER, ROBINSON & FORD, L.L.P.
401 Old Marion Road NE
P. O. Box 10020
Cedar Rapids, IA 52410-0020
(319) 395-7400
(319) 395-9041 (Facsimile)
acollins@krflawfirm.com

ATTORNEY FOR PLAINTIFF

IN THE IOWA DISTRICT COURT IN AND FOR LINN COUNTY

| | |
|---|---|
| **DENNIS JOHNSON**<br>**Plaintiff,**<br><br><br>**VB ACQUISITIONS LLC**<br>**VERTICAL BRIDGE**<br><br>**Defendant.** | **Case No. 06571  SCSC281043**<br><br> **ORDER**<br><br>**DATE: 10/13/25** |

This matter is before the Court upon the request for a telephone hearing.  The Court finds this Motion should be GRANTED for the reasons stated therein.  Parties may appear at the hearing by telephone by calling the designated conference line:

**Toll-free dial-in number: 1-877-304-9269  Conference code: 113816**

Parties shall call the dial-in number at 1-877-304-9269 and conference code 113816 at the time set for hearing. You will be prompted to enter the code to connect to the conference call.

Hearings are currently being held both in-person and by telephone as circumstances dictate.  Court dockets can often run behind and there may be a wait while an in-person hearing is being held. Do not disconnect or hang up as no record of dialing in is kept and the Court must assume that whoever is on the line at the time the hearing begins is who has appeared for hearing, and whoever is not on the line at the time the hearing begins has failed to appear.

ALL NECESSARY EXHIBITS, NOTICES AND RETURNS OF SERVICE, OR PROOF OF SERVICE, MUST BE FILED ELECTRONICALLY WITH THE CLERK OF COURT WITHIN THE TIME ALLOWED FOR FILING EXHIBITS. EACH PARTY IS RESPONSIBLE FOR ENSURING THEIR OWN WITNESS STATEMENTS, PHOTOGRAPHS, PAPERWORK, OR OTHER EXHIBITS ARE PROPERLY UPLOADED AND SUBMITTED.  IN THE EVENT A PARTY FAILS TO TIMELY FILE SUCH DOCUMENTS, THIS HEARING MAY BE CONTINUED, OR THE DOCUMENT OR ITEM MAY BE EXCLUDED FROM EVIDENCE.

RECORDING OR REBROADCASTING OF A COURT PROCEEDING OTHER THAN THE OFFICIAL RECORDING, INCLUDING THE TAKING OF PICTURES, SCREENSHOTS, OR OTHER VISUAL OR AUDIO COPYING OF A VIDEO OR TELEPHONE HEARING, IS PROHIBITED ABSENT AN EXPANDED NEWS MEDIA COVERAGE ORDER. ANY VIOLATION MAY RESULT IN CONTEMPT OF COURT OR OTHER SANCTIONS.

**CLERK TO NOTIFY.**



State of Iowa Courts

**Case Number**       **Case Title**
SCSC281043       DENNIS JOHNSON V VB ACQUISITIONS LLC
**Type:**       Other Order

So Ordered



Kristin L.D. Schneider, District Associate Judge
Sixth Judicial District of Iowa

Electronically signed on 2025-10-13 13:31:19

| | |
|---|---|
| Dennis Johnson | Case No.: **SCSC281043** |
| Plaintiff/Petitioner | Hearing Date: **10/15/2025** |
| s. | |
| VB Acquisitions LLC d/b/a Vertical Bridge | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **ORIGINAL NOTICE AND PETITION FOR FORCIBLE ENTRY AND DETAINER** |

Received by **Matthew Jacobs**, on the **3rd day of October, 2025 at 5:58 AM** to be served upon **VB Acquisitions, LLC** at 2 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444. On the **3rd day of October, 2025 at 11:20 AM**, I, Matthew Jacobs, **SERVED VB Acquisitions, LLC** at 22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444 in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, y serving **Julie Carson**, on behalf of said Corporation. THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS: delivered the documents to Julie Carson who identified themselves as the sr paralegal with identity confirmed y subject stating their name. The individual accepted service with direct delivery. The individual appeared to be gray-haired white female contact 55-65 years of age, 5'6"-5'8" tall and weighing 160-180 lbs with glasses.

Service Fee Total: **$140.00**

er 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing s true and correct.

| | | |
|---|---|---|
| NAME: _____ | 1067 | 10-6-25 |
| Matthew Jacobs | Server ID # | Date |

Notary Public: Subscribed and sworn before me on this 6th day of October in the year of 20 25 ersonally known to me _____ or ✓ identified by the following document:

| |
|---|
| Number/Reference: J212-548-76-181 |
| Type: FL DRIVERS LICENS |
| Notary Public for State of: FLORIDA |
| Commission Expiration: 03/26/2029 |

otary Public (Legal Signature)



OSCAR ALVARADO
Notary Public - State of Florida
Commission # HH 657157
My Comm. Expires Mar 26, 2029



## OPTION AND LAND SUBLEASE AGREEMENT

This Agreement of Sublease is made this 13th day of February, 1995, by and between Dennis Johnson, whose address is 355 31st Street, Marion, Iowa 52302 (Sublessor), and Centel Cellular Company of Iowa, having an office at c/o Sprint Cellular Company, 8725 Higgins Road, Chicago, Illinois 60631 (Sublessee).

1. **The Option.** (a) For the sum of $100.00 (the Option Fee), to be paid to Sublessor by Sublessee upon execution of this Agreement and other good and valuable consideration, Sublessor hereby grants to Sublessee the exclusive and irrevocable option from the date hereof through and including July 21, 1995, (the Initial Option Period), to lease the Premises (as defined below) on the terms and conditions set forth below (the Option). The time during which the Option may be exercised may be extended for an additional 180 days upon written notification to Sublessor by Sublessee accompanied by the payment of an additional $100.00 (the Additional Option Fee), delivered to Sublessor prior to the end of the Initial Option Period.

(b) In the event the Additional Option Fee is not made and/or written notice not delivered by the due date for the same, then the Option shall terminate and this Agreement shall terminate and Sublessor shall be entitled to retain all previously paid sums as full payment for the Option granted hereunder. However, if Sublessor accepts any Additional Option Fee, Rent and/or written notice after the due date for the same, then Sublessee's default will be deemed waived and this Agreement shall be reinstated. Upon Sublessee's exercise of the Option, the Sublease Agreement which follows shall take effect.

(c) In the event Sublessor fails to perform its obligations under this Agreement for any reason other than Sublessee's breach, Sublessee may pursue all remedies available at law and in equity. Sublessor hereby acknowledges that Sublessee will incur significant expenses in reliance on this Agreement and therefore agrees to pay Sublessee for all consequential damages which Sublessee will suffer as a result of Sublessor's breach.

2. **Premises.** Sublessor is the lessee of that certain real property including the premises known as 3200 Fifth Avenue, Marion, Iowa pursuant to that certain Lease dated August 16, 1994 by and between Virgil F. Johnson and Lorice M. Johnson who subsequently assigned their interest therein to Triple E Manufacturing (Lessor) pursuant to that certain Assignment of Lease dated August 16, 1994 (the Lease), attached hereto and made a part hereof as Exhibit C. Sublessor hereby leases to Sublessee and Sublessee hereby leases from Sublessor, a 100 x 100 foot parcel of property located behind 3200 Fifth Avenue, Marion, Iowa (the Premises). A legal

legal\srw\agreemts\marionia.195
1/26/95

-2-

description of the Premises is attached hereto and incorporated herein as Exhibit A. Sublessor also hereby grants to Sublessee the right to survey the Premises, and said survey shall then become Exhibit B which shall be attached hereto and made a part hereof. Cost for such work shall be borne by Sublessee. The Premises are leased for the express purpose of constructing and operating a cellular radio transmission facility, including the erection of up to a 250 foot self-supported tower (the Tower), a 12' x 28' equipment shelter, and an 8' chain link fence with barbed wire on top around the tower base and appurtenances and equipment shelter.

**3. Term.** The term of this Sublease (the Term) shall be for a period of twenty (20) years, from the commencement date which will be mutually agreed to by the parties in writing. Sublessor grants to Sublessee the right to renew this Sublease for two (2) additional terms of five (5) years each. In order to exercise this renewal option, Sublessee shall deliver to Lessee written notice of Sublessee's intent to renew this Sublease not less than ninety (90) days prior to the expiration of the then-current lease term.

**4. Rent.** The rent for the first five years of the Term shall be $400.00 (Four Hundred Dollars) per month, paid monthly in advance, which Sublessee shall pay to Sublessor at such place as Sublessor shall designate to Sublessee in writing. If the Term does not begin on the first day or end on the last day of a month, the Rent for that partial month shall be prorated by multiplying the monthly Rent by a fraction, the numerator of which is the number of days of the partial month included in the Term and the denominator of which is the total number of days in the full calendar month.

Beginning with the 6th year of the Sublease term and every 5th year thereafter, including during any renewal terms, the then current monthly rental fee shall be increased by three percent (3%) over the immediately preceding term for which the rent has remained constant.

**5. Ingress and Egress.** Sublessor hereby grants to Sublessee an Easement for ingress, egress and regress over the property of Lessor adjacent to the Premises as may be required for the purpose of construction and maintenance of a tower, building, equipment and other necessary appurtenances on the Premises and for access to and installation, construction and maintenance of underground and above ground telephone, telegraph, and power lines, in connection with its use of the Premises. The term of this Easement shall commence upon execution of this Sublease and shall continue until the last to occur of (i) expiration of the Sublease term, or (ii) removal by

-3-

Sublessee of all of its property from the Premises after expiration of the Sublease term. The location and configuration of the Easement shall be agreed upon by the parties within ten (10) business days of Sublessee's exercise of the Option, and shall be included in any recorded Memorandum of this Sublease. In addition, at Sublessee's request, this Easement shall be set forth in a separate Easement Agreement executed by Lessor, Sublessor and Sublessee and recorded as an encumbrance on the property of Lessor and shall be binding upon all subsequent owners, successors and assigns. The form of this Easement Agreement shall be acceptable to Lessor, Sublessor and Sublessee, and shall be executed within ten (10) business days of Sublessee's exercise of the Option.

   **6.   Title and Quiet Possession.**   Sublessor represents and covenants that: (a) it has full right and authority to enter into this Sublease for the full Term; and (b) Sublessee, upon performing the terms of this Sublease will have, hold and enjoy quiet possession of the Premises.

   **7.   Subordination, Attornment, and Nondisturbance.** Sublessee agrees that this Sublease shall be subject and subordinate to any mortgages or deeds of trust now or hereafter placed upon the leased Premises and to all modifications thereto, and to all present and future advances made with respect to any such mortgage or deed of trust; provided that, Sublessee's possession of the Premises shall not be disturbed so long as Sublessee shall continue to perform its duties and obligations under this Sublease and Sublessee's obligation to perform such duties and obligations shall not be in any way increased or its rights diminished by the provisions of this paragraph. Sublessee agrees to attorn to the mortgagee, trustee, or beneficiary under any such mortgage or deed of trust, and to the purchaser in a sale pursuant to the foreclosure thereof; provided that, Sublessee's possession of the leased Premises shall not be disturbed so long as Sublessee shall continue to perform its duties and obligations under this Sublease. Sublessee's obligations hereunder are conditioned upon receipt by Sublessee, within ten (10) business days of Sublessee's notice of its intent to exercise the Option, or within ten (10) business days of the date of creation of any future mortgages or deeds of trust, of an Attornment and Nondisturbance Agreement in form reasonably acceptable to Sublessee, from any holder of a mortgage or deed of trust to which this Sublease is, or shall become, subordinate.

   **8.   No Waste or Nuisance.** During the term of this Sublease, Sublessee shall comply with all applicable laws affecting the Premises, the breach of which might result in any penalty on Sublessor or forfeiture of Sublessor's title to the Premises. Sublessee shall not commit, or suffer to be committed, any waste on the Premises, or any nuisance. Sublessee shall obtain any necessary governmental licenses or authorizations required for the construction and use of the Tower and related equipment on the

-4-

Premises and shall furnish copies of same to Sublessor as same are issued.

**9. Assignment and Subleasing.** Sublessee may sublet the Premises in whole or in part without Sublessor's consent, but the making of any such sublease shall not release Sublessee from, or otherwise affect in any manner, any of Sublessee's obligations hereunder. Sublessee shall not assign or transfer this Sublease, or any interest herein, without the prior written consent of Sublessor which shall not be unreasonably withheld, delayed or conditioned, and a consent to an assignment shall not be deemed to be a consent to any subsequent assignment. Sublessee is expressly permitted to assign its rights under this Sublease to Sprint Cellular Company, its successors in interest, assigns or any affiliate thereof.

**10. Notices.** All notices, demands, or other writings which this Sublease requires to be delivered, or which may be delivered by either party hereto to the other, shall be deemed to have been fully delivered, when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

    To Sublessor:    Mr. Dennis Johnson
                     355 31st Street
                     Marion, IA 52302

    With a copy to   DJ Smith, Esq
                     King, Smith & Boresi
                     121 Third Street S.W.
                     Cedar rapids, IA 52404

    To Sublessee:    Centel Cellular Company of Iowa
                     c/o Sprint Cellular Company
                     8725 Higgins Road
                     Chicago, Illinois 60631
                     Attn: Vice President - Engineering
                           and Network Operations

The address to which any notice, demand, or other writing may be delivered to any party as above provided may be changed by written notice given by such party as above provided.

**11. Sublessee Improvements.** Sublessee shall have the right, at its sole expense, to make such improvements on the Premises as it may deem necessary, including any improvements necessary for the construction and operation of a cellular radio transmitter site. Sublessee will be responsible for the cost of any site preparation work necessary to prepare the Premises to house Sublessee's cell site equipment. All Sublessee's improvements, including but not limited to the Tower, prefabricated buildings, generators, fencing, etc., shall remain the property of Sublessee. Upon termination of

-5-

this Sublease, Sublessee shall, to the extent reasonable, restore the Premises to its original condition at the commencement of this Sublease, except for ordinary wear and tear and damages by the elements or damages over which Sublessee had no control. Sublessee and Sublessor agree that it shall not be reasonable to require Sublessee to remove any improvements contemplated hereunder which are permanent in nature. Removal of all improvements shall occur within sixty (60) days of termination of this Sublease.

**12. Insurance.** At all times during the term(s) of this Sublease, Sublessee shall maintain in full force a comprehensive public liability insurance policy covering all of Sublessee's operations, activities, liabilities and obligations on the leased Premises, having singly or in combination, limits not less than One Million Dollars ($1,000,000). Such policy shall name Sublessor as an additional insured party. Sublessee shall give Sublessor such evidence of insurance coverage as Sublessor may reasonably demand.

**13. Operating Expense.** Sublessee shall fully and promptly pay for all water, gas, heat, light, power, telephone service, and other public utilities furnished to the Premises and used by Sublessee throughout the term hereof, and all other costs and expenses of every kind whatsoever in connection with the use, operation, and maintenance of the Premises and all activities conducted thereon.

**14. Taxes.** Sublessee shall pay any personal property taxes assessed on, or any portion of such taxes attributable to, the Tower and Sublessee's related facilities. Sublessor shall pay when due all real property taxes and all other fees and assessments attributable to the Premises. However, Sublessee shall pay, as additional Rent, any increase in real property taxes levied against the Premises which is directly attributable to Sublessee's use of the Premises, and Sublessor agrees to furnish proof of such increase to Sublessee.

**15. Government Compliance.** Sublessee shall maintain and operate its tower and any attachments thereto in compliance with all government regulations, including all applicable FCC and FAA rules and regulations. Except insofar as Sublessee is made responsible by this Sublease, Sublessor shall maintain the surrounding premises in good condition and state of repair.

**16. Hold Harmless.** Sublessor shall be held harmless by Sublessee from any liability (including reimbursement of reasonable legal fees and all costs) for damages to any person or any property in or upon the Premises at Sublessee's invitation, or for damages to any person or property resulting from the physical structure or actions of Sublessee (including damages caused by or resulting from the existence of the Tower, the shelter and all appurtenances, on the Premises), unless such damages are caused by, or are the result of, the misconduct or negligence of Sublessor or any of Sublessor's

-6-

agents, servants, employees or licensees.  Notwithstanding any provisions herein to the contrary, it is understood and agreed that all property kept, installed, stored or maintained in or upon the Premises by Sublessee shall be so installed, kept, stored or maintained at the risk of Sublessee.  Sublessor shall not be responsible for any loss or damage to equipment owned by Sublessee which might result from tornadoes, lightning, wind storms, or other Acts of God; provided, however, Sublessor shall be responsible for, and agrees to hold Sublessee harmless from any liability (including reimbursement of reasonable legal fees and all costs), for damages to any person or any property in or upon the Premises arising out of the misconduct or negligence of Sublessor or any of Sublessor's agents, servants, employees or licensees.  Neither Sublessor nor Sublessee shall in any event be liable in damages for each other's business loss, business interruption or other consequential damages of whatever kind or nature, regardless of the cause of such damages, and each party, and anyone claiming by or through them, expressly waives all claims for such damages.

**17.  Sublessee's Performance and Surrender.**  Sublessee shall pay the rent and all other sums required to be paid by Sublessee hereunder in the amounts, at the times, and in the manner herein provided, and shall keep and perform all terms and conditions hereof on its part to be kept and performed, and at the expiration or sooner termination of this Sublease, surrender to Sublessor the Premises subject to the other provisions of this Sublease.

**18.  Right to Terminate.**  Sublessee may terminate this Sublease, at its option, after giving not less than thirty (30) days notice to Sublessor, if:

(a)  any governmental agency denies a request by Sublessee for a permit, license or approval which is required for Sublessee to construct or operate the contemplated tower and a cellular radio transmitting facility on the Premises or such permit shall be revoked;

(b)  Sublessee determines that technical problems or radio interference problems from other antennas or from nearby radio transmitting facilities, which problems cannot reasonably be corrected, preclude Sublessee from using the Premises for its intended purpose;

(c)  Sublessee determines that Sublessee does not have acceptable and legally enforceable means of ingress and egress to and from the Premises;

(d)  Utilities necessary for Sublessee's contemplated use of the Premises are not available to the Premises; or

–7–

(e) The Premises are damaged or destroyed to an extent which prohibits or materially interferes with Sublessee's use of the Premises or Sublessee's equipment and attachments thereto.

In the event of termination by Sublessee pursuant to this provision, Sublessee shall be relieved of all further liability hereunder. Any rental fees paid prior to said termination date shall be retained by Sublessor.

**19. Binding on Successors.** The covenants and conditions contained herein shall apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

**20. Access to Premises.** In addition to the Easement granted in Section 5, Sublessee and its engineers, officers, employees, agents and contractors shall have full access to the Premises during the Sublease term(s), consistent with Sublessor's standard property security policy.

**21. Governing Law.** The parties intend that this Sublease and the relationship of the parties shall be governed by the laws of the State of Iowa.

**22. Entire Agreement.** All of the representations and obligations of the parties are contained herein, and no modification, waiver or amendment of this Sublease or of any of its conditions or provisions shall be binding upon a party unless in writing signed by that party or a duly authorized agent of that party empowered by a written authority signed by that party. The waiver by any party of a breach of any provision of this Sublease shall not operate or be construed as a waiver of any subsequent breach of that provision by the same party, or of any other provision or condition of the Sublease.

**23. Survey and Testing.** Sublessee shall have the right for One Hundred Thirty (130) business days from the execution of this Option and Land Sublease Agreement to survey, soil test, and make any other investigations necessary to determine if the surface of the Premises is suitable for construction of a cellular radio transmission tower. If Sublessee, within the above stated time determines that for any reason the surface or subsurface of the Premises is not suitable to construct the tower, this Sublease, upon written notice given to Sublessor during the above stated time shall become null and void; provided that at Sublessee's sole expense the Premises shall be promptly restored to its condition prior to such testing and investigations and provided further that Sublessee shall deliver copies of all soil tests and investigation reports to Sublessor.

**24. Hazardous Waste.** Sublessor represents and warrants that to the best of Sublessor's knowledge, the Premises have never been

-8-

used for treatment, storage, or disposal of any solid or liquid waste which is classified as toxic or hazardous under any federal, state or local law or regulation in effect as of the commencement date, and the Premises (including the subsurface water) has not been contaminated by any such toxic or hazardous material. Sublessor shall indemnify Sublessee and its parent, subsidiary and affiliated companies and their officers, agents and employees, and hold them harmless from all claims, demands, causes, losses, damages and expenses, including attorneys' fees, arising directly or indirectly from a breach of this covenant.

The covenants of this paragraph shall survive and be enforceable and shall continue in full force and effect for the benefit of Sublessee and its subsequent transferees, successors and assigns and shall survive the term of this Sublease and any renewal periods thereof.

**25. Original Lease.** Sublessee will perform Sublessor's obligations under the original Lease except the covenant to pay rent and except as specifically provided herein to the contrary. Further, Sublessee will not be liable to Lessor for any damages or costs of enforcement for which Sublessor is responsible. Attached hereto as Exhibit C is a copy of the Lease in effect between Sublessor and Lessor.

**26. Mechanic's Liens.** Sublessee will not cause any mechanic's or materialman's lien to be placed on the leased Premises, and Sublessee agrees to indemnify, defend and hold harmless Sublessor from any such lien from a party claiming by, through or under Sublessee.

**27. Headings.** The headings of sections and subsections are for convenient reference only and shall not be deemed to limit, construe, affect, modify or alter the meaning of such sections or subsections.

**28. Time of Essence.** Time is of the essence of Sublessor's and Sublessee's obligations under this Sublease.

**29. Severability.** If any section, subsection, term or provision of this Sublease or the application thereof to any party or circumstance shall, to any extent, be invalid or unenforceable, the remainder of said section, subsection, term or provision of the Sublease or the application of same to parties or circumstances other than those to which it was held invalid or unenforceable, shall not be affected thereby and each remaining section, subsection, term or provision of this Sublease shall be valid or enforceable to the fullest extent permitted by law.

-9-

**30. Real Estate Broker.** Except for Koch & Co., Realtors, Sublessor represents and warrants that Sublessor has not signed a listing agreement, dealt with or otherwise agreed to pay a broker's commission, finder's fee or other like compensation to anyone in connection with the lease of the Premises or the transaction contemplated by this Agreement and Sublessor agrees to indemnify and hold Sublessee harmless from and against any such claims or costs, including attorneys' fees, incurred as a result of the transaction contemplated by this Agreement.

**31. Further Assurances.** Each of the parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm this Agreement or any other agreement contained herein in the manner contemplated hereby.

**32. Right to Register or Record.** Upon the request of Sublessee, Sublessor agrees to promptly execute and deliver to Sublessee a Memorandum of Sublease in recordable or registerable form setting forth the general terms of the Sublease, and such other information as Sublessee shall request.

**33. Interpretation.** Each party to this Agreement and its counsel have reviewed and revised this Agreement. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or of any amendments or exhibits to this Agreement.

**34. Date of Agreement.** The parties acknowledge that certain obligations of Sublessor and Sublessee are to be performed within certain specified periods of time which are determined by reference to the date of execution of this Sublease. The parties therefore agree that wherever the term "date of execution of this Sublease," or words of similar import are used herein, they shall mean the date upon which this Sublease has been duly executed by Sublessor or Sublessee whichever is the later to so execute this Sublease. The parties further agree to specify the date on which they execute this Sublease beneath their respective signatures in the space provided and warrant and represent to the other that such a date is in fact the date on which each duly executed this Sublease.

-10-

IN WITNESS WHEREOF, the parties hereto have executed this Sublease Agreement on the day and year first above written.

Sublessor:
**DENNIS JOHNSON**

By: _____

Date: 28 Jan 1995

I, Kenneth L Koch do hereby certify that Dennis Johnson personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal this 28th day of January, 1995.

_____
Kenneth L. Koch
NOTARY PUBLIC

Sublessee:
**CENTEL CELLULAR COMPANY OF IOWA**

By: _____
Vice President - Engineering
Network Operations

Date: 2/8/95

I, Barbara L. Stitt, do hereby certify that Susan Cena personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal this 13th day of February, 1995.

_____
Barbara L. Stitt

OFFICIAL SEAL
BARBARA L. STITT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-24-98



IOWA STATE BAR ASSOCIATION
Official Form No. 37.1 (Trade Name Registered, State of Iowa, 1967)

FOR THE LEGAL EFFECT OF THE USE OF THIS FORM, CONSULT YOUR LAWYER

# LEASE-BUSINESS PROPERTY — SHORT FORM

THIS AGREEMENT, made and entered into on the 17th day of August 19 94 by and between Virgil F. Johnson and Lorice M. Johnson ("Landlord"), whose address for the purpose of this lease, is 3200 Fifth Avenue

Marion Iowa 52302

and Dennis Johnson ("Tenant"), whose address for the purpose of this lease is 355 31st Street

Marion Iowa 52302

The parties agree as follows:

1. PREMISES AND TERM. Landlord leases to Tenant the following real estate, situated in Marion, Linn County, Iowa: 3200 Fifth Avenue, Marion, Iowa, legally described in the attached Exhibit "A" together with all improvements thereon, and all rights, easements and appurtenances thereto belonging, for a term beginning on the 1st day of August 19 94, and ending at the 31st day of July 2099, upon the condition that Tenant performs as provided in this lease.

2. RENT. Tenant agrees to pay Landlord as rent, $ 1,000.00 per month, in advance, commencing on the 1st day of August 19 94 and on the first day of each month thereafter, during the term of this lease. Rent for any partial month shall be prorated as additional rent.

All sums shall be paid at the address of Landlord, or at such other place as Landlord may designate in writing. Delinquent payments shall draw interest at 7 % per annum.

2. POSSESSION. Tenant shall be entitled to possession on the first day of the lease term, and shall yield possession to Landlord at the termination of this lease. SHOULD LANDLORD BE UNABLE TO GIVE POSSESSION ON SAID DATE, TENANT'S ONLY DAMAGES SHALL BE A PRO RATA ABATEMENT OF RENT.

4. USE. Tenant shall use the premises only for manufacturing and business purposes.

5. CARE AND MAINTENANCE. (a) Tenant takes the premises as is, except as herein provided.

(b) Landlord shall keep the following in good repair (STRIKE THOSE NOT APPLICABLE) (roof) (exterior walls) (foundations) (sewer) (plumbing) (heating) (wiring) (air conditioning) (plate glass) (windows and window glass) (parking areas) (driveways) (sidewalks) (exterior decorating) (interior decorating)

except when the same are occasioned by the misuse or negligence of Tenant, its agents, employees or invitees. Landlord shall not be liable for failure to make any repairs or replacements unless Landlord fails to do so within a reasonable time after written notice from Tenant.

(c) Tenant shall maintain the premises in a reasonable safe, serviceable, clean and presentable condition, and except for the repairs and replacements provided to be made by Landlord in subparagraph (b) above, shall make all repairs, replacements and improvements to the premises, INCLUDING ALL CHANGES, ALTERATIONS OR ADDITIONS ORDERED BY ANY LAWFULLY CONSTITUTED GOVERNMENTAL AUTHORITY DIRECTLY RELATED TO TENANT'S USE OF THE PREMISES. Tenant shall make no structural changes or alterations without the prior written consent of Landlord. Unless otherwise provided, and if the premises include the ground floor, Tenant agrees to remove all snow and ice and other obstructions from the sidewalks on or abutting the premises.

6. UTILITIES AND SERVICES. Tenant shall pay for all utilities and services which may be used on the premises, except the following to be furnished by Landlord:

Landlord shall not be liable for damages for failure to perform as herein provided, or for any stoppage for needed repairs or for improvements or arising from causes beyond the control of Landlord, provided Landlord uses reasonable diligence to resume such services.

7. SURRENDER. Upon the termination of this lease, Tenant will surrender the premises to Landlord in good and clean condition, except for ordinary wear and tear or damage without fault or liability of Tenant. Continued possession, beyond the term of this lease and the acceptance of rent by Landlord shall constitute a month-to-month extension of this lease.

8. ASSIGNMENT AND SUBLETTING. ~~Shaxxxxxxxxxxxxxxxxxxxxxxxxx~~ Either party may assign or sublet this lease without the prior consent of the other party hereto.

9. PROPERTY INSURANCE. (a) Tenant will not do or omit the doing of any act which would invalidate any insurance, or increase the insurance rates in force on the premises.

(b) To the extent of all insurance collectible for damage to property, and to the extent permitted by their respective policies of fire and extended coverage insurance, each party hereby waives rights of subrogation against the other, regardless of fault.

10. INDEMNITY AND LIABILITY INSURANCE. Except for any negligence of Landlord, Tenant will protect, defend, and indemnify Landlord from and against any and all loss, costs, damage and expenses occasioned by, or arising out of, any accident or other occurrence causing or inflicting injury or damage to any person or property, happening or done in, upon or about the premises, or that directly or indirectly to the tenancy, use or occupancy thereof, or any part thereof by Tenant or any person claiming through or under Tenant. Tenant will procure and maintain liability insurance in amounts not less than $ 100,000.00 for any person injured, $ 250,000.00 for any one accident, and with the limits of $ 100,000.00 for property damage, which names Landlord as an insured.

11. DAMAGE. In the event of damage to the premises, so that Tenant is unable to conduct business on the premises, this lease may be terminated at the option of either party. Such termination shall be effected by notice of one party to the other within twenty _____ days after such notice, and both parties shall thereafter be released from all future obligations hereunder.

12. MECHANICS' LIENS. Neither Tenant, nor anyone claiming by, through, or under Tenant, shall have the right to file any mechanic's lien against the premises. Tenant shall give notice in advance to all contractors and subcontractors who may furnish, or agree to furnish, any material, service or labor for any improvement on the premises.

13. TERMINATION UPON DEFAULT OF TENANT. Upon default in payment of rent, abandonment of the premises, or upon any other default by Tenant of the terms of this lease, this lease may, at the option of Landlord, and without prejudice to any other rights or remedies afforded Landlord by law, be cancelled and forfeited, PROVIDED, HOWEVER, before any such cancellation and forfeiture, Landlord shall give Tenant notice specifying the default, or defaults, and stating that this lease will be cancelled and forfeited ten _____ days after notice, unless such default, or defaults, is remedied within such period. Notwithstanding the foregoing, Tenant may terminate lease upon sixty (60) days prior written notice.

14. SIGNS, Landlord, during the last ninety _____ days of this lease, shall have the right to maintain on the premises either or both a "For Rent" or "For Sale" sign. Tenant will permit prospective tenants or buyers to enter and examine the premises.

15. NOTICES AND DEMANDS. All notices shall be given to the parties hereto at the addresses designated unless either party notifies the other, in writing, of a different address. Without prejudice to any other method of notifying a party in writing or making a demand or other communication, such notice shall be considered given under the terms of this lease when it is deposited in the U.S. Mail, registered or certified, postage prepaid, properly addressed, return receipt requested, and postage prepaid.

16. PROVISIONS BINDING. Each and every covenant and agreement herein contained shall extend to and be binding upon the respective successors, heirs, administrators, executors and assigns of the parties hereto.

LANDLORD: VIRGIL F. JOHNSON

LORICE M. JOHNSON

TENANT: DENNIS JOHNSON

SCHEDULE

EXHIBIT C-1

## ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE made this ___16th___ day of August, 1994 by and between Virgil F. Johnson and Lorice M. Johnson, as assignors, and Triple "E" Manufacturing Company, as assignee, witnesseth:

For and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, the assignors hereby assign and transfer unto the assignee a certain lease made and entered into on the ___16th___ day of August, 1994 for the period of 99 years from August 1, 1994, between Virgil F. Johnson and Lorice M. Johnson, as landlord, and Dennis Johnson, as tenant, subject to all the conditions, stipulations, and agreements contained therein. The assignee hereby agrees to fulfill the assignors' obligations under said lease and hold the latter harmless therefrom.

IN WITNESS WHEREOF, the parties hereto sign below on the date and year first above written.

_____
VIRGIL F. JOHNSON

_____
LORICE M. JOHNSON

**Assignors**

TRIPLE "E" MANUFACTURING COMPANY

By _____
Its President

By _____
Its Secretary

**Assignee**

SCHEDULE
EXHIBIT ___C-2___

Iowa Title & Abstract Co.
CEDAR RAPIDS, IOWA

EXHIBIT "A"

BOOK 1870 PAGE 532

ALL THAT PART OF THE WEST FRACTIONAL ¼ OF THE NW¼ OF SECTION
5-83-6, LINN COUNTY, IOWA, LYING SOUTH OF THE RIGHT OF WAY OF
THE C.M. ST.P. RWY. CO.

more particularly described as follows:

Beginning at a point on the South line of the right of way of
the C.M. & St. P. Rwy. Co., said point being 33 feet West of
the East line of said West Frl. ¼ of the NW¼; thence West along
the South line of the C.M. & St. P. Rwy. right of way to a
point 20 rods East of the West line of said West Frl. ¼ of the
NW¼; thence South along a line 20 rods Easterly of and parallel
to the said West line of said West Frl. ¼ of the NW¼ a distance
of 306.2 feet; thence Easterly to a point which is 33 feet W-ly
of the East line of said West Frl. ¼ of the NW¼ and 305.7 feet
South of the point of beginning; thence North 305.2 feet to the
point of beginning

excepting therefrom the following:

Beginning at a point on the South line of the said right of way
of the C.M. & St. P. Rwy. Co., said point being 33 feet West of
the East line of said West Frl. ¼ of the NW¼; thence West along
the South line of the C.M. & St. P. Rwy. Co. right of way a dis-
tance of 499.11 feet; thence South along a line parallel to the
West line of said Frl. ¼ of NW¼ a distance of 305.73 feet; thence
E-ly to a point which is 33 feet W-ly of the East line of said
West Frl. ¼ of the NW¼ and 305.2 feet South of the point of begin-
ning, thence North 305.2 feet to the point of beginning.

AND

ALL THAT PART OF THE WEST FRACTIONAL ¼ OF THE NW¼ OF SECTION
5-83-6, LINN COUNTY, IOWA :

described as follows:

Beginning 1464 feet North of the quarter section corner on the
West side of said Section; thence North on the Section line 40
feet; thence East 330 feet; thence South 40 feet; thence West
330 feet to the point of beginning
excepting public highway.

FILED FOR RECORD
4:11 P.M.
SEP 11 1964

SCHEDULE
EXHIBIT C-3

Legal Description - Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa described as follows:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet to the point of beginning; thence N0°05'00"E, 50.00 feet; thence N89°54'30"E, 100.00 feet; thence S0°05'00"W, 100.00 feet; thence S89°54'30"W, 100.00 feet; thence N0°05'00"E, 50.00 feet to the point of beginning.

Said parcel contains 0.23 acres, subject to easements and restrictions of record.

Legal Description - 20' Ingress - Egress to Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet to the point of beginning; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet.

SCHEDULE _____

EXHIBIT ___**A**___



## CONSENT BY LANDOWNER

    We, the undersigned do hereby state that we are the legal owners of that certain .23 acre tract of land to be leased for a period of 20 years, with options to renew for two (2) additional period of five (5) years, to Centel Cellular Company of Iowa (SubLessee) for the installation and maintenance of an unmanned cellular facility, such lease is contingent upon Lessee receiving favorable zoning on the premises.

Virgil F. Johnson

3200 Fifth Avenue
Marion, IA

Lorice M. Johnson

Subscribed and sworn to before me this 28 day of January, 1995.

Notary Public
Kenneth L. Koch

## CONSENT BY LESSOR

    The undersigned does hereby state that he is the Lessee of Record of that certain property located at 3200 Fifth Avenue, Marion, Iowa under lease with Triple E Manufacturing, dated August 16, 1994 and hereby agree that Centel Cellular Company of Iowa shall have the right to the Access Easement as described on Exhibit A attached hereto and made a part hereof.

LESSOR:

Triple E Manufacturing

By: _____

Its: President

Subscribed and sworn to before me this 28 day of January, 1995

Notary Public

My Commission Expires
Kenneth L. Koch

 

Legal Description - Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa described as follows:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet to the point of beginning; thence N0°05'00"E, 50.00 feet; thence N89°54'30"E, 100.00 feet; thence S0°05'00"W, 100.00 feet; thence S89°54'30"W, 100.00 feet; thence N0°05'00"E, 50.00 feet to the point of beginning.

Said parcel contains 0.23 acres, subject to easements and restrictions of record.

Legal Description - 20' Ingress - Egress to Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet to the point of beginning; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet.

SCHEDULE
EXHIBIT A

DOCUMENT NO. 34734

**EASEMENT AGREEMENT** RECORDING FEE 15.00

AUTOMATION FEE 1.00

WHEREAS, Virgil F. Johnson and Lorice M. Johnson, (hereinafter referred to as "Grantors"), are the owners of certain real estate more particularly described on Exhibit "A" attached hereto and incorporated herein by reference, and;

WHEREAS, Centel Cellular Company of Iowa, (hereinafter referred to as "Grantee"), has entered into a certain Option and Land Sublease Agreement dated February 13, 1995 by and between Dennis Johnson and Grantee for the lease of certain real property as is more particularly referenced in a certain **MEMORANDUM OF LEASE AGREEMENT** dated March 29, 1995 filed of record on April 13, 1995 in Book 3172 at Page 168 of the records of the Linn County Recorder's Office, ("Benefited Property") and;

WHEREAS, the Grantors have agreed, in consideration of the sum of $1.00 and other valuable consideration, the receipt of which is hereby acknowledged, to grant to the Grantee a non-exclusive easement over a portion of the Grantors' real property for the purpose of permitting the Grantee and the Grantee's agents ingress and egress to that real property which is the subject matter of the aforementioned February 13, 1995 lease agreement by and between Dennis Johnson and Grantee.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, it is agreed by and between Grantors and Grantee as follows:

1) Grantors hereby grant to Grantee for the non-exclusive use by Grantee and the Grantee's employees, agents, invitees, designates, licensees, assigns and successor(s)-in-interest, if any, an Easement for the purpose of ingress, egress and regress over the property described on Exhibit "A" attached hereto and made a part hereof, as may be required for the purpose of construction and maintenance of a tower, building, equipment and other necessary appurtenances on the Benefited Property.

2) Grantors further agree and covenant that they shall erect no buildings, obstructions or any other improvements and shall not plant trees, shrubbery or foliage which would interfere in any way with the construction, reconstruction, maintenance or use of said easement described in paragraph one above.

3) The easement term shall commence on April 1, 1995 and shall continue for the duration of the Option and Land Sublease Agreement dated February 13, 1995.

4) This agreement shall be binding upon the Grantors and their successors-in-interest, assigns and heirs and shall inure to the benefit of Grantee and the Grantee's assigns and successor(s)-in-interest, if any. The Easement shall run with and be

BOOK 3181 PAGE 488

appurtenant to the Benefited Property incorporated herein by reference.

DATED this 5th day of May, 1995.

_Virgil F. Johnson_
Virgil F. Johnson

_Lorice M. Johnson_
Lorice M. Johnson

STATE OF IOWA    )
                 ) ss.
COUNTY OF LINN   )

On this 5th day of May, 1995, before me, the undersigned, a Notary Public in and for the State of Iowa, personally appeared Virgil F. Johnson, to me known to be the person named in and who executed the foregoing instrument, and acknowledged that he executed the same as his voluntary act and deed.

_Paula G. Fields_
Notary Public in and for the State of Iowa

STATE OF IOWA    )
                 ) ss.
COUNTY OF LINN   )

On this 5th day of May, 1995, before me, the undersigned, a Notary Public in and for the State of Iowa, personally appeared Lorice M. Johnson, to me known to be the person named in and who executed the foregoing instrument, and acknowledged that she executed the same as her voluntary act and deed.

_Paula G. Fields_
Notary Public in and for the State of Iowa

-2-

Legal Description - 20' Ingress - Egress Easement

BOOK 3181 PAGE 489

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1484.00 feet to the point of beginning; thence N90°00'00"E, 336.59 feet; thence S2°57'45"E, 65.93 feet; thence N87°19'55"E, 224.80 feet; thence N54°57'20"E, 150.28 feet.

EXHIBIT "A"

FILED FOR RECORD
MAY 0 9 1995
8:25 AM
Eugene F. Nank
RECORDER LINN CO., IOWA



**SITE PLAN**
**SPRINT CELLULAR TOWER**
SECTION 5, T83N, R6W
MARION, IOWA

**ENLARGED PLAN**
SCALE : 1" = 30'

APPLICANT: Barbara L. Stitt

ADDRESS: Sprint Cellular
8725 Higgins Road
Chicago, Illinois 60631

SURVEYOR: Daniel J. Johnson

ADDRESS: 209 29th Street N.E.
Cedar Rapids, Iowa 52402

PHONE: (319) 362-9548

Legal Description - Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa described as follows:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N00°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet to the point of beginning; thence N0°05'00"E, 50.00 feet; thence N89°54'30"E, 100.00 feet; thence S0°05'00"W, 100.00 feet; thence S89°54'30"W, 100.00 feet to the point of beginning.

Said parcel contains 0.23 acres, subject to easements and restrictions of record.

Legal Description - 20' Ingress - Egress to Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N00°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet to the point of beginning; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet.

"I hereby certify that this land surveying document was prepared by me or under my direct personal supervision and that I am a duly Registered Land Surveyor under the laws of the State of Iowa.

Daniel J Johnson, Iowa Reg. No. 11854
Date 1-26, 1994

My registration renewal date is December 31, 1994.

**SITE PLAN**

HALL AND HALL ENGINEERS, INC.
209 29th Street N.E.
Cedar Rapids, Iowa 52402
(319) 362-9548

Project Title SPRINT CELLULAR TOWER
SECTION 5, T83N, R6W
MARION, IOWA

SCHEDULE
EXHIBIT
B



vertical bridge

VB Acquisitions, LLC
c/o Vertical Bridge REIT, LLC
22 W Atlantic Ave, Suite 310
Delray Beach, FL 33444
Phone: (214) 227-9805
Email: welcomeletter@verticalbridge.com

July 7, 2025

RE:     **VB Site Name:**
         **VB Site ID:**
         **Site Address:**               (the "Site")

Dear

VB Acquisitions, LLC ("Vertical Bridge"), or one of its affiliates, recently entered into an agreement with Cellco Partnership d/b/a Verizon Wireless and its affiliates ("Verizon") to exclusively lease, operate and manage the Site, including a communications facility located thereon. Vertical Bridge and Verizon are parties to a transition services agreement whereby Verizon shall make all ground payments on Vertical Bridge's behalf, until August 1, 2025, at which time Vertical Bridge shall assume all payment obligations.

Please provide the information requested below and enclosed so we can update your information in our records. You can return the below forms in the provided envelope or email to welcomeletter@verticalbridge.com.

-   **Electronic Payment Form:** Our electronic fund transfer (EFT) information and authorization form for you to complete and return to us. This enables us to pay your rent via electronic deposit directly to your bank account, eliminating mail delays or loss.
-   **Vertical Bridge Information Form:** A form for you to return to us with your contact names, email addresses, phone numbers, etc.
-   **IRS Form W-9:** A blank W-9 form for you to return to us with your tax identification number for the required Form 1099 filings with the IRS. Please remember that the name on the W-9 must agree with the name on the rent checks we will send to you. In addition, if there are multiple payees, you must return separate W-9 forms for each payee unless they are married individuals filing joint tax returns.

Additionally, this letter shall serve as official written notice pursuant to the lease for the Site that, effectively immediately, all written notices and correspondence should be sent to:

VB Acquisitions, LLC
c/o Vertical Bridge REIT, LLC
22 W Atlantic Ave, Suite 310
Delray Beach, Florida 33444
Attention: General Counsel
Ref: US-CA-7884

Please note that Vertical Bridge treats its ground leases (and the terms contained therein) with its landlords as confidential and proprietary and expects that you will not disclose the terms with anyone without Vertical Bridge's prior consent.

Visit our website at www.VerticalBridge.com for more information about our company. If you have any questions or concerns about this notice, you can reach us by phone at (214) 227-9805 or by email at welcomeletter@verticalbridge.com. Additionally enclosed is a magnet with a QR code that will take you directly to our landlord resources page. There you will find up to date forms, a map with up-to-date contact information for the asset manager assigned to your Site and additional information.

Thank you and we look forward to working with you.

Sincerely,

Vertical Bridge

E-FILED 2025 OCT 13 3:21 PM LINN - CLERK OF DISTRICT COURT

| | |
|---|---|
| Dennis Johnson | Case No.: **SCSC281043** |
| Plaintiff/Petitioner | Hearing Date: **10/15/2025** |
| vs. | |
| VB Acquisitions LLC d/b/a Vertical Bridge | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **ORIGINAL NOTICE AND PETITION FOR FORCIBLE ENTRY AND DETAINER** |

Received by **Matthew Jacobs**, on the **3rd day of October, 2025 at 5:58 AM** to be served upon **VB Acquisitions, LLC** at 22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444. On the **3rd day of October, 2025 at 11:20 AM**, I, Matthew Jacobs, **SERVED VB Acquisitions, LLC** at 22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444 in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Julie Carson**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
delivered the documents to Julie Carson who identified themselves as the sr paralegal with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be gray-haired white female contact 55-65 years of age, 5'6"-5'8" tall and weighing 160-180 lbs with glasses.

Service Fee Total: **$140.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| NAME: _____ | 1067 | _10-6-25_ |
| Matthew Jacobs | Server ID # | Date |

Notary Public: Subscribed and sworn before me on this _6th_ day of _October_ in the year of 20_25_
personally known to me _____ or __✓__ identified by the following document:

Number/Reference: _J212-548-76-161_
Type: _FL Drivers license_
Notary Public for State of: _Florida_
Commission Expiration: _03/26/2029_

_____
Notary Public (Legal Signature)

OSCAR ALVARADO
Notary Public - State of Florida
Commission # HH 657157
My Comm. Expires Mar 26, 2029

E-FILED  2025 OCT 13 3:31 PM LINN - CLERK OF DISTRICT COURT

| | |
|---|---|
| Dennis Johnson | Case No.: **SCSC281043** |
| Plaintiff/Petitioner | Hearing Date: **10/15/2025** |
| vs. | |
| VB Acquisitions LLC d/b/a Vertical Bridge | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **ORIGINAL NOTICE AND PETITION FOR FORCIBLE ENTRY AND DETAINER** |

Received by **Matthew Jacobs**, on the **3rd day of October, 2025 at 5:58 AM** to be served upon **VB Acquisitions, LLC** at 2 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444. On the **3rd day of October, 2025 at 11:20 AM**, I, Matthew Jacobs, **SERVED VB Acquisitions, LLC** at 22 W Atlantic Ave. Ste. 310, Delray Beach, Palm Beach County, FL 33444 in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Julie Carson**, on behalf of said Corporation.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS: **I delivered the documents to Julie Carson who identified themselves as the sr paralegal with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a gray-haired white female contact 55-65 years of age, 5'6"-5'8" tall and weighing 160-180 lbs with glasses.**

Service Fee Total: **$140.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| NAME: Matthew Jacobs | 1067 Server ID # | 10-6-25 Date |

Notary Public:  Subscribed and sworn before me on this _6th_ day of _October_ in the year of 20_25_ personally known to me _____ or __✓__ identified by the following document:

Number/Reference: _J212-548-76-181_
Type: _FL Drivers License_
Notary Public for State of: _Florida_
Commission Expiration: _03/26/2029_

_Oscar Alvarado_
Notary Public (Legal Signature)

OSCAR ALVARADO
Notary Public - State of Florida
Commission # HH 657157
My Comm. Expires Mar 26, 2029

  

## OPTION AND LAND SUBLEASE AGREEMENT

This Agreement of Sublease is made this 13th day of February, 1995, by and between Dennis Johnson, whose address is 355 31st Street, Marion, Iowa 52302 (Sublessor), and Centel Cellular Company of Iowa, having an office at c/o Sprint Cellular Company, 8725 Higgins Road, Chicago, Illinois 60631 (Sublessee).

1. **The Option.** (a) For the sum of $100.00 (the Option Fee), to be paid to Sublessor by Sublessee upon execution of this Agreement and other good and valuable consideration, Sublessor hereby grants to Sublessee the exclusive and irrevocable option from the date hereof through and including July 21, 1995, (the Initial Option Period), to lease the Premises (as defined below) on the terms and conditions set forth below (the Option). The time during which the Option may be exercised may be extended for an additional 180 days upon written notification to Sublessor by Sublessee accompanied by the payment of an additional $100.00 (the Additional Option Fee), delivered to Sublessor prior to the end of the Initial Option Period.

(b) In the event the Additional Option Fee is not made and/or written notice not delivered by the due date for the same, then the Option shall terminate and this Agreement shall terminate and Sublessor shall be entitled to retain all previously paid sums as full payment for the Option granted hereunder. However, if Sublessor accepts any Additional Option Fee, Rent and/or written notice after the due date for the same, then Sublessee's default will be deemed waived and this Agreement shall be reinstated. Upon Sublessee's exercise of the Option, the Sublease Agreement which follows shall take effect.

(c) In the event Sublessor fails to perform its obligations under this Agreement for any reason other than Sublessee's breach, Sublessee may pursue all remedies available at law and in equity. Sublessor hereby acknowledges that Sublessee will incur significant expenses in reliance on this Agreement and therefore agrees to pay Sublessee for all consequential damages which Sublessee will suffer as a result of Sublessor's breach.

2. **Premises.** Sublessor is the lessee of that certain real property including the premises known as 3200 Fifth Avenue, Marion, Iowa pursuant to that certain Lease dated August 16, 1994 by and between Virgil F. Johnson and Lorice M. Johnson who subsequently assigned their interest therein to Triple E Manufacturing (Lessor) pursuant to that certain Assignment of Lease dated August 16, 1994 (the Lease), attached hereto and made a part hereof as Exhibit C. Sublessor hereby leases to Sublessee and Sublessee hereby leases from Sublessor, a 100 x 100 foot parcel of property located behind 3200 Fifth Avenue, Marion, Iowa (the Premises). A legal

legal\srw\agreemts\marionia.195
1/26/95

description of the Premises is attached hereto and incorporated herein as Exhibit A. Sublessor also hereby grants to Sublessee the right to survey the Premises, and said survey shall then become Exhibit B which shall be attached hereto and made a part hereof. Cost for such work shall be borne by Sublessee. The Premises are leased for the express purpose of constructing and operating a cellular radio transmission facility, including the erection of up to a 250 foot self-supported tower (the Tower), a 12' x 28' equipment shelter, and an 8' chain link fence with barbed wire on top around the tower base and appurtenances and equipment shelter.

**3. Term.** The term of this Sublease (the Term) shall be for a period of twenty (20) years, from the commencement date which will be mutually agreed to by the parties in writing. Sublessor grants to Sublessee the right to renew this Sublease for two (2) additional terms of five (5) years each. In order to exercise this renewal option, Sublessee shall deliver to Lessee written notice of Sublessee's intent to renew this Sublease not less than ninety (90) days prior to the expiration of the then-current lease term.

**4. Rent.** The rent for the first five years of the Term shall be $400.00 (Four Hundred Dollars) per month, paid monthly in advance, which Sublessee shall pay to Sublessor at such place as Sublessor shall designate to Sublessee in writing. If the Term does not begin on the first day or end on the last day of a month, the Rent for that partial month shall be prorated by multiplying the monthly Rent by a fraction, the numerator of which is the number of days of the partial month included in the Term and the denominator of which is the total number of days in the full calendar month.

Beginning with the 6th year of the Sublease term and every 5th year thereafter, including during any renewal terms, the then current monthly rental fee shall be increased by three percent (3%) over the immediately preceding term for which the rent has remained constant.

**5. Ingress and Egress.** Sublessor hereby grants to Sublessee an Easement for ingress, egress and regress over the property of Lessor adjacent to the Premises as may be required for the purpose of construction and maintenance of a tower, building, equipment and other necessary appurtenances on the Premises and for access to and installation, construction and maintenance of underground and above ground telephone, telegraph, and power lines, in connection with its use of the Premises. The term of this Easement shall commence upon execution of this Sublease and shall continue until the last to occur of (i) expiration of the Sublease term, or (ii) removal by

-3-

Sublessee of all of its property from the Premises after expiration of the Sublease term. The location and configuration of the Easement shall be agreed upon by the parties within ten (10) business days of Sublessee's exercise of the Option, and shall be included in any recorded Memorandum of this Sublease. In addition, at Sublessee's request, this Easement shall be set forth in a separate Easement Agreement executed by Lessor, Sublessor and Sublessee and recorded as an encumbrance on the property of Lessor and shall be binding upon all subsequent owners, successors and assigns. The form of this Easement Agreement shall be acceptable to Lessor, Sublessor and Sublessee, and shall be executed within ten (10) business days of Sublessee's exercise of the Option.

**6. Title and Quiet Possession.** Sublessor represents and covenants that: (a) it has full right and authority to enter into this Sublease for the full Term; and (b) Sublessee, upon performing the terms of this Sublease will have, hold and enjoy quiet possession of the Premises.

**7. Subordination, Attornment, and Nondisturbance.** Sublessee agrees that this Sublease shall be subject and subordinate to any mortgages or deeds of trust now or hereafter placed upon the leased Premises and to all modifications thereto, and to all present and future advances made with respect to any such mortgage or deed of trust; provided that, Sublessee's possession of the Premises shall not be disturbed so long as Sublessee shall continue to perform its duties and obligations under this Sublease and Sublessee's obligation to perform such duties and obligations shall not be in any way increased or its rights diminished by the provisions of this paragraph. Sublessee agrees to attorn to the mortgagee, trustee, or beneficiary under any such mortgage or deed of trust, and to the purchaser in a sale pursuant to the foreclosure thereof; provided that, Sublessee's possession of the leased Premises shall not be disturbed so long as Sublessee shall continue to perform its duties and obligations under this Sublease. Sublessee's obligations hereunder are conditioned upon receipt by Sublessee, within ten (10) business days of Sublessee's notice of its intent to exercise the Option, or within ten (10) business days of the date of creation of any future mortgages or deeds of trust, of an Attornment and Nondisturbance Agreement in form reasonably acceptable to Sublessee, from any holder of a mortgage or deed of trust to which this Sublease is, or shall become, subordinate.

**8. No Waste or Nuisance.** During the term of this Sublease, Sublessee shall comply with all applicable laws affecting the Premises, the breach of which might result in any penalty on Sublessor or forfeiture of Sublessor's title to the Premises. Sublessee shall not commit, or suffer to be committed, any waste on the Premises, or any nuisance. Sublessee shall obtain any necessary governmental licenses or authorizations required for the construction and use of the Tower and related equipment on the

-4-

Premises and shall furnish copies of same to Sublessor as same are issued.

**9.** **Assignment and Subleasing.** Sublessee may sublet the Premises in whole or in part without Sublessor's consent, but the making of any such sublease shall not release Sublessee from, or otherwise affect in any manner, any of Sublessee's obligations hereunder. Sublessee shall not assign or transfer this Sublease, or any interest herein, without the prior written consent of Sublessor which shall not be unreasonably withheld, delayed or conditioned, and a consent to an assignment shall not be deemed to be a consent to any subsequent assignment. Sublessee is expressly permitted to assign its rights under this Sublease to Sprint Cellular Company, its successors in interest, assigns or any affiliate thereof.

**10.** **Notices.** All notices, demands, or other writings which this Sublease requires to be delivered, or which may be delivered by either party hereto to the other, shall be deemed to have been fully delivered, when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

     To Sublessor:    Mr. Dennis Johnson
                      355 31st Street
                      Marion, IA 52302

     With a copy to   DJ Smith, Esq
                      King, Smith & Boresi
                      121 Third Street S.W.
                      Cedar rapids, IA 52404

     To Sublessee:    Centel Cellular Company of Iowa
                      c/o Sprint Cellular Company
                      8725 Higgins Road
                      Chicago, Illinois 60631
                      Attn: Vice President - Engineering
                            and Network Operations

The address to which any notice, demand, or other writing may be delivered to any party as above provided may be changed by written notice given by such party as above provided.

**11.** **Sublessee Improvements.** Sublessee shall have the right, at its sole expense, to make such improvements on the Premises as it may deem necessary, including any improvements necessary for the construction and operation of a cellular radio transmitter site. Sublessee will be responsible for the cost of any site preparation work necessary to prepare the Premises to house Sublessee's cell site equipment. All Sublessee's improvements, including but not limited to the Tower, prefabricated buildings, generators, fencing, etc., shall remain the property of Sublessee. Upon termination of

-5-

this Sublease, Sublessee shall, to the extent reasonable, restore the Premises to its original condition at the commencement of this Sublease, except for ordinary wear and tear and damages by the elements or damages over which Sublessee had no control. Sublessee and Sublessor agree that it shall not be reasonable to require Sublessee to remove any improvements contemplated hereunder which are permanent in nature. Removal of all improvements shall occur within sixty (60) days of termination of this Sublease.

**12. Insurance.** At all times during the term(s) of this Sublease, Sublessee shall maintain in full force a comprehensive public liability insurance policy covering all of Sublessee's operations, activities, liabilities and obligations on the leased Premises, having singly or in combination, limits not less than One Million Dollars ($1,000,000). Such policy shall name Sublessor as an additional insured party. Sublessee shall give Sublessor such evidence of insurance coverage as Sublessor may reasonably demand.

**13. Operating Expense.** Sublessee shall fully and promptly pay for all water, gas, heat, light, power, telephone service, and other public utilities furnished to the Premises and used by Sublessee throughout the term hereof, and all other costs and expenses of every kind whatsoever in connection with the use, operation, and maintenance of the Premises and all activities conducted thereon.

**14. Taxes.** Sublessee shall pay any personal property taxes assessed on, or any portion of such taxes attributable to, the Tower and Sublessee's related facilities. Sublessor shall pay when due all real property taxes and all other fees and assessments attributable to the Premises. However, Sublessee shall pay, as additional Rent, any increase in real property taxes levied against the Premises which is directly attributable to Sublessee's use of the Premises, and Sublessor agrees to furnish proof of such increase to Sublessee.

**15. Government Compliance.** Sublessee shall maintain and operate its tower and any attachments thereto in compliance with all government regulations, including all applicable FCC and FAA rules and regulations. Except insofar as Sublessee is made responsible by this Sublease, Sublessor shall maintain the surrounding premises in good condition and state of repair.

**16. Hold Harmless.** Sublessor shall be held harmless by Sublessee from any liability (including reimbursement of reasonable legal fees and all costs) for damages to any person or any property in or upon the Premises at Sublessee's invitation, or for damages to any person or property resulting from the physical structure or actions of Sublessee (including damages caused by or resulting from the existence of the Tower, the shelter and all appurtenances, on the Premises), unless such damages are caused by, or are the result of, the misconduct or negligence of Sublessor or any of Sublessor's

-6-

agents, servants, employees or licensees. Notwithstanding any provisions herein to the contrary, it is understood and agreed that all property kept, installed, stored or maintained in or upon the Premises by Sublessee shall be so installed, kept, stored or maintained at the risk of Sublessee. Sublessor shall not be responsible for any loss or damage to equipment owned by Sublessee which might result from tornadoes, lightning, wind storms, or other Acts of God; provided, however, Sublessor shall be responsible for, and agrees to hold Sublessee harmless from any liability (including reimbursement of reasonable legal fees and all costs), for damages to any person or any property in or upon the Premises arising out of the misconduct or negligence of Sublessor or any of Sublessor's agents, servants, employees or licensees. Neither Sublessor nor Sublessee shall in any event be liable in damages for each other's business loss, business interruption or other consequential damages of whatever kind or nature, regardless of the cause of such damages, and each party, and anyone claiming by or through them, expressly waives all claims for such damages.

**17. Sublessee's Performance and Surrender.** Sublessee shall pay the rent and all other sums required to be paid by Sublessee hereunder in the amounts, at the times, and in the manner herein provided, and shall keep and perform all terms and conditions hereof on its part to be kept and performed, and at the expiration or sooner termination of this Sublease, surrender to Sublessor the Premises subject to the other provisions of this Sublease.

**18. Right to Terminate.** Sublessee may terminate this Sublease, at its option, after giving not less than thirty (30) days notice to Sublessor, if:

(a) any governmental agency denies a request by Sublessee for a permit, license or approval which is required for Sublessee to construct or operate the contemplated tower and a cellular radio transmitting facility on the Premises or such permit shall be revoked;

(b) Sublessee determines that technical problems or radio interference problems from other antennas or from nearby radio transmitting facilities, which problems cannot reasonably be corrected, preclude Sublessee from using the Premises for its intended purpose;

(c) Sublessee determines that Sublessee does not have acceptable and legally enforceable means of ingress and egress to and from the Premises;

(d) Utilities necessary for Sublessee's contemplated use of the Premises are not available to the Premises; or

(e) The Premises are damaged or destroyed to an extent which prohibits or materially interferes with Sublessee's use of the Premises or Sublessee's equipment and attachments thereto.

In the event of termination by Sublessee pursuant to this provision, Sublessee shall be relieved of all further liability hereunder. Any rental fees paid prior to said termination date shall be retained by Sublessor.

**19. Binding on Successors.** The covenants and conditions contained herein shall apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

**20. Access to Premises.** In addition to the Easement granted in Section 5, Sublessee and its engineers, officers, employees, agents and contractors shall have full access to the Premises during the Sublease term(s), consistent with Sublessor's standard property security policy.

**21. Governing Law.** The parties intend that this Sublease and the relationship of the parties shall be governed by the laws of the State of Iowa.

**22. Entire Agreement.** All of the representations and obligations of the parties are contained herein, and no modification, waiver or amendment of this Sublease or of any of its conditions or provisions shall be binding upon a party unless in writing signed by that party or a duly authorized agent of that party empowered by a written authority signed by that party. The waiver by any party of a breach of any provision of this Sublease shall not operate or be construed as a waiver of any subsequent breach of that provision by the same party, or of any other provision or condition of the Sublease.

**23. Survey and Testing.** Sublessee shall have the right for One Hundred Thirty (130) business days from the execution of this Option and Land Sublease Agreement to survey, soil test, and make any other investigations necessary to determine if the surface of the Premises is suitable for construction of a cellular radio transmission tower. If Sublessee, within the above stated time determines that for any reason the surface or subsurface of the Premises is not suitable to construct the tower, this Sublease, upon written notice given to Sublessor during the above stated time shall become null and void; provided that at Sublessee's sole expense the Premises shall be promptly restored to its condition prior to such testing and investigations and provided further that Sublessee shall deliver copies of all soil tests and investigation reports to Sublessor.

**24. Hazardous Waste.** Sublessor represents and warrants that to the best of Sublessor's knowledge, the Premises have never been

-8-

used for treatment, storage, or disposal of any solid or liquid waste which is classified as toxic or hazardous under any federal, state or local law or regulation in effect as of the commencement date, and the Premises (including the subsurface water) has not been contaminated by any such toxic or hazardous material. Sublessor shall indemnify Sublessee and its parent, subsidiary and affiliated companies and their officers, agents and employees, and hold them harmless from all claims, demands, causes, losses, damages and expenses, including attorneys' fees, arising directly or indirectly from a breach of this covenant.

The covenants of this paragraph shall survive and be enforceable and shall continue in full force and effect for the benefit of Sublessee and its subsequent transferees, successors and assigns and shall survive the term of this Sublease and any renewal periods thereof.

25. **Original Lease.** Sublessee will perform Sublessor's obligations under the original Lease except the covenant to pay rent and except as specifically provided herein to the contrary. Further, Sublessee will not be liable to Lessor for any damages or costs of enforcement for which Sublessor is responsible. Attached hereto as Exhibit C is a copy of the Lease in effect between Sublessor and Lessor.

26. **Mechanic's Liens.** Sublessee will not cause any mechanic's or materialman's lien to be placed on the leased Premises, and Sublessee agrees to indemnify, defend and hold harmless Sublessor from any such lien from a party claiming by, through or under Sublessee.

27. **Headings.** The headings of sections and subsections are for convenient reference only and shall not be deemed to limit, construe, affect, modify or alter the meaning of such sections or subsections.

28. **Time of Essence.** Time is of the essence of Sublessor's and Sublessee's obligations under this Sublease.

29. **Severability.** If any section, subsection, term or provision of this Sublease or the application thereof to any party or circumstance shall, to any extent, be invalid or unenforceable, the remainder of said section, subsection, term or provision of the Sublease or the application of same to parties or circumstances other than those to which it was held invalid or unenforceable, shall not be affected thereby and each remaining section, subsection, term or provision of this Sublease shall be valid or enforceable to the fullest extent permitted by law.

-9-

**30. Real Estate Broker.** Except for Koch & Co., Realtors, Sublessor represents and warrants that Sublessor has not signed a listing agreement, dealt with or otherwise agreed to pay a broker's commission, finder's fee or other like compensation to anyone in connection with the lease of the Premises or the transaction contemplated by this Agreement and Sublessor agrees to indemnify and hold Sublessee harmless from and against any such claims or costs, including attorneys' fees, incurred as a result of the transaction contemplated by this Agreement.

**31. Further Assurances.** Each of the parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm this Agreement or any other agreement contained herein in the manner contemplated hereby.

**32. Right to Register or Record.** Upon the request of Sublessee, Sublessor agrees to promptly execute and deliver to Sublessee a Memorandum of Sublease in recordable or registerable form setting forth the general terms of the Sublease, and such other information as Sublessee shall request.

**33. Interpretation.** Each party to this Agreement and its counsel have reviewed and revised this Agreement. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or of any amendments or exhibits to this Agreement.

**34. Date of Agreement.** The parties acknowledge that certain obligations of Sublessor and Sublessee are to be performed within certain specified periods of time which are determined by reference to the date of execution of this Sublease. The parties therefore agree that wherever the term "date of execution of this Sublease," or words of similar import are used herein, they shall mean the date upon which this Sublease has been duly executed by Sublessor or Sublessee whichever is the later to so execute this Sublease. The parties further agree to specify the date on which they execute this Sublease beneath their respective signatures in the space provided and warrant and represent to the other that such a date is in fact the date on which each duly executed this Sublease.

-10-

IN WITNESS WHEREOF, the parties hereto have executed this Sublease Agreement on the day and year first above written.

Sublessor:
**DENNIS JOHNSON**

By: _____

Date: 28 Jan 1995

I, Kenneth L. Koch do hereby certify that Dennis Johnson personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal this 28th day of January, 1995.

_____
Kenneth L. Koch
NOTARY PUBLIC

Sublessee:
**CENTEL CELLULAR COMPANY OF IOWA**

By: _____
Vice President - Engineering
Network Operations

Date: 2/8/95

I, Barbara L. Stitt, do hereby certify that Susan Cenato personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal this 13th day of February, 1995.

_____
Barbara L. Stitt

OFFICIAL SEAL
BARBARA L. STITT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-24-98



IOWA STATE BAR ASSOCIATION
Official Form No. 37.1 (Trade Name Registered, State of Iowa, 1967)

FOR LEGAL EFFECT OF THE USE
OF THIS FORM, CONSULT YOUR LAWYER

# LEASE-BUSINESS PROPERTY — SHORT FORM

THIS AGREEMENT, made and entered into on the 17th day of August 19 94 by and between Virgil F. Johnson and Lorice M. Johnson

("Landlord"), whose address, for the purpose of this lease, is 3200 Fifth Avenue

Marion, Iowa 52302

and Dennis Johnson

("Tenant"), whose address for the purpose of this lease is 355 31st Street

Marion, Iowa 52302

The parties agree as follows:

1. PREMISES AND TERM. Landlord leases to Tenant the following real estate, situated in Marion, Linn County, Iowa: 3200 Fifth Avenue, Marion, Iowa, legally described in the attached Exhibit "A" together with all improvements thereon, and all rights, easements and appurtenances thereto belonging, for a term beginning on the 1st day of August 19 94, and ending on the 31st day of July 19 2099, upon the condition that Tenant performs as provided in this lease.

2. RENT. Tenant agrees to pay Landlord as rent, $ 1,000.00 per month, in advance, commencing on the 1st day of August 19 94, and on the first day of each month thereafter, during the term of this lease. Rent for any partial month shall be prorated as additional rent.

All sums shall be paid at the address of Landlord, or at such other place as Landlord may designate in writing. Delinquent payments shall draw interest of 7 % per annum.

2. POSSESSION. Tenant shall be entitled to possession on the first day of the lease term, and shall yield possession to Landlord at the termination of this lease. SHOULD LANDLORD BE UNABLE TO GIVE POSSESSION ON SAID DATE, TENANT'S ONLY DAMAGES SHALL BE A PRO RATA ABATEMENT OF RENT.

4. USE. Tenant shall use the premises only for manufacturing and business purposes.

5. CARE AND MAINTENANCE. (a) Tenant takes the premises as is, except as herein provided.

(b) Landlord shall keep the following in good repair (STRIKE THOSE NOT APPLICABLE) (roof) (exterior walls) (foundations) (sewer) (plumbing) (heating) (wiring) (air conditioning) (plate glass) (windows and window glass) (parking area) (driveways) (sidewalks) (exterior decorating) (interior decorating)

except when the same are occasioned by the misuse or negligence of Tenant, its agents, employees or invitees. Landlord shall not be liable for failure to make any repairs or replacements unless Landlord fails to do so within a reasonable time after written notice from Tenant.

(c) Tenant shall maintain the premises in a reasonable safe, serviceable, clean and presentable condition, and except for the repairs and replacements provided to be made by Landlord in subparagraph (b) above, shall make all repairs, replacements and improvements to the premises, INCLUDING ALL CHANGES, ALTERATIONS OR ADDITIONS ORDERED BY ANY LAWFULLY CONSTITUTED GOVERNMENTAL AUTHORITY DIRECTLY RELATED TO TENANT'S USE OF THE PREMISES. Tenant shall make no structural changes or alterations without the prior written consent of Landlord. Unless otherwise provided, and if the premises include the ground floor, Tenant agrees to remove all snow and ice and other obstructions from the sidewalks on or abutting the premises.

6. UTILITIES AND SERVICES. Tenant shall pay for all utilities and services which may be used on the premises, except the following to be furnished by Landlord:

Landlord shall not be liable for damages for failure to perform as herein provided, or for any stoppage for needed repairs or for improvements or arising from causes beyond the control of Landlord, provided Landlord uses reasonable diligence to resume such services.

7. SURRENDER. Upon the termination of this lease, Tenant will surrender the premises to Landlord in good and clean condition, except for ordinary wear and tear or damage without fault or liability of Tenant. Continued possession, beyond the term of this Lease and the acceptance of rent by Landlord shall constitute a month-to-month extension of this lease.

8. ASSIGNMENT AND SUBLETTING. ~~Subletting of any portion of the premises, or assignment of this lease, shall not be permitted without the prior written consent of Landlord.~~ Either party may assign or sublet this lease without the prior consent of the other party hereto.

9. PROPERTY INSURANCE. (a) Tenant will not do or permit the doing of any act which would invalidate any insurance, or increase the insurance rates in force on the premises.

(b) To the extent of all insurance collectible for damage to property, and to the extent permitted by their respective policies of fire and extended coverage insurance, each party hereby waives rights of subrogation against the other, regardless of fault.

10. INDEMNITY AND LIABILITY INSURANCE. Except for any negligence of Landlord, Tenant will protect, defend, and indemnify Landlord from and against any and all loss, costs, damage and expenses occasioned by, or arising out of, any accident or other occurrence causing or inflicting injury or damage to any person or property, happened or done in, upon or about the premises, or due directly or indirectly to the tenancy, use or occupancy thereof, or any part thereof by Tenant or any person claiming through or under Tenant. Tenant will procure and maintain liability insurance in amounts not less than $ 100,000.00 for any person injured, $ 250,000.00 for any one accident, and with the limits of $ 100,000.00 for property damage, which names Landlord as an insured.

11. DAMAGE. In the event of damage to the premises, so that Tenant is unable to conduct business on the premises, this lease may be terminated at the option of either party. Such termination shall be effected by notice of one party to the other within twenty_____ days after such notice, and both parties shall thereafter be released from all future obligations hereunder.

12. MECHANICS' LIENS. Neither Tenant, nor anyone claiming by, through, or under Tenant, shall have the right to file any mechanic's lien against the premises. Tenant shall give notice in advance to all contractors and subcontractors who may furnish, or agree to furnish, any material, service or labor for any improvement on the premises.

13. TERMINATION UPON DEFAULT OF TENANT. Upon default in payment of rent, abandonment of the premises, or upon any other default by Tenant of the terms of this lease, this lease may, at the option of Landlord, and without prejudice to any other rights or remedies afforded Landlord by law, be cancelled and forfeited, PROVIDED, HOWEVER, before any such cancellation and forfeiture Landlord shall give Tenant notice specifying the default, or defaults, and stating that this Lease will be cancelled and forfeited ten _____ days after notice, unless such default, or defaults, is remedied within such period. Notwithstanding the foregoing, Tenant may terminate lease upon sixty (60) days prior written notice.

14. SIGNS. Landlord, during the last ninety _____ days of this lease, shall have the right to maintain on the premises either or both a "For Rent" or "For Sale" sign. Tenant will permit prospective tenants or buyers to enter and examine the premises.

15. NOTICES AND DEMANDS. All notices shall be given to the parties hereto at the addresses designated unless either party notifies the other, in writing, of a different address. Without prejudice to any other method of notifying a party in writing or making a demand or other communication, such notice shall be considered given under the terms of this lease when it is deposited in the U.S. Mail, registered or certified, postage prepaid, properly addressed, return receipt requested, and postage prepaid.

16. PROVISIONS BINDING. Each and every covenant and agreement herein contained shall extend to and be binding upon the respective successors, heirs, administrators, executors and assigns of the parties hereto.

LANDLORD   VIRGIL F. JOHNSON

LORICE M. JOHNSON

TENANT   DENNIS JOHNSON

SCHEDULE

C-1

## ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE made this ___16th___ day of August, 1994 by and between Virgil F. Johnson and Lorice M. Johnson, as assignors, and Triple "E" Manufacturing Company, as assignee, witnesseth:

For and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, the assignors hereby assign and transfer unto the assignee a certain lease made and entered into on the ___16th___ day of August, 1994 for the period of 99 years from August 1, 1994, between Virgil F. Johnson and Lorice M. Johnson, as landlord, and Dennis Johnson, as tenant, subject to all the conditions, stipulations, and agreements contained therein. The assignee hereby agrees to fulfill the assignors' obligations under said lease and hold the latter harmless therefrom.

IN WITNESS WHEREOF, the parties hereto sign below on the date and year first above written.

_____
VIRGIL F. JOHNSON

_____
LORICE M. JOHNSON

**Assignors**

TRIPLE "E" MANUFACTURING COMPANY

By _____
    Its President

By _____
    Its Secretary

**Assignee**

SCHEDULE
EXHIBIT ___C-2___

Iowa Title & Abstract Co.
CEDAR RAPIDS, IOWA

EXHIBIT "A"

BOOK 1870 PAGE 532

ALL THAT PART OF THE WEST FRACTIONAL ¼ OF THE NW¼ OF SECTION
5-83-6, LINN COUNTY, IOWA, LYING SOUTH OF THE RIGHT OF WAY OF
THE C.M. ST.P. RWY. CO.

more particularly described as follows:

Beginning at a point on the South line of the right of way of
the C.M. & St. P. Rwy. Co., said point being 33 feet West of
the East line of said West Frl. ¼ of the NW¼; thence West along
the South line of the C.M. & St. P. Rwy. right of way to a
point 20 rods East of the West line of said West Frl. ¼ of the
NW¼; thence South along a line 20 rods Easterly of and parallel
to the said West line of said West Frl. ¼ of the NW¼ a distance
of 306.2 feet; thence Easterly to a point which is 33 feet W-ly
of the East line of said West Frl. ¼ of the NW¼ and 305.7 feet
South of the point of beginning; thence North 305.2 feet to the
point of beginning

excepting therefrom the following:

Beginning at a point on the South line of the said right of way
of the C.M. & St. P. Rwy. Co., said point being 33 feet West of
the East line of said West Frl. ¼ of the NW¼; thence West along
the South line of the C.M. & St. P. Rwy. Co. right of way a dis-
tance of 499.11 feet; thence South along a line parallel to the
West line of said Frl. ¼ of NW¼ a distance of 305.73 feet; thence
E-ly to a point which is 33 feet W-ly of the East line of said
West Frl. ¼ of the NW¼ and 305.2 feet South of the point of begin-
ning, thence North 305.2 feet to the point of beginning.

AND

ALL THAT PART OF THE WEST FRACTIONAL ¼ OF THE NW¼ OF SECTION
5-83-6, LINN COUNTY, IOWA:

described as follows:

Beginning 1464 feet North of the quarter section corner on the
West side of said Section; thence North on the Section line 40
feet; thence East 330 feet; thence South 40 feet; thence West
330 feet to the point of beginning
excepting public highway.

FILED FOR RECORD
4:11 P.M.
SEP 13 1994

SCHEDULE
EXHIBIT C-3

Legal Description - Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa described as follows:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet to the point of beginning; thence N0°05'00"E, 50.00 feet; thence N89°54'30"E, 100.00 feet; thence S0°05'00"W, 100.00 feet; thence S89°54'30"W, 100.00 feet; thence N0°05'00"E, 50.00 feet to the point of beginning.

Said parcel contains 0.23 acres, subject to easements and restrictions of record.

Legal Description - 20' Ingress - Egress to Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1485.00 feet to the point of beginning; thence N89°45'45"E, 336.47 feet; thence S2°25'45"E, 75.66 feet; thence N89°45'45"E, 200.00 feet; thence N54°57'20"E, 179.82 feet.

SCHEDULE _____

EXHIBIT ___A___



## CONSENT BY LANDOWNER

We, the undersigned do hereby state that we are the legal owners of that certain .23 acre tract of land to be leased for a period of 20 years, with options to renew for two (2) additional period of five (5) years, to Centel Cellular Company of Iowa (SubLessee) for the installation and maintenance of an unmanned cellular facility, such lease is contingent upon Lessee receiving favorable zoning on the premises.

Virgil F. Johnson

3200 Fifth Avenue
Marion, IA

Lorice M. Johnson

Subscribed and sworn to before me this 28 day of January, 1995.

Notary Public

Kenneth L. Koch

## CONSENT BY LESSOR

The undersigned does hereby state that he is the Lessee of Record of that certain property located at 3200 Fifth Avenue, Marion, Iowa under lease with Triple E Manufacturing, dated August 16, 1994 and hereby agree that Centel Cellular Company of Iowa shall have the right to the Access Easement as described on Exhibit A attached hereto and made a part hereof.

LESSOR:

Triple E Manufacturing

By:
Its: President

Subscribed and sworn to before me this 28 day of January, 1995

Notary Public

My Commission Expires

Kenneth L. Koch

 

Legal Description - Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5. Township 83 North. Range 6 West of the 5th Principal Meridian. Marion. Iowa described as follows:

Commencing at the West Quarter Corner of Section 5. Township 83 North. Range 6 West of the 5th Principal Meridian: thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5. 1485.00 feet: thence N89°45'45"E. 336.47 feet: thence S2°25'45"E. 75.66 feet: thence N89°45'45"E. 200.00 feet: thence N54°57'20"E. 179.82 feet to the point of beginning: thence N0°05'00"E. 50.00 feet: thence N89°54'30"E. 100.00 feet: thence S0°05'00"W. 100.00 feet: thence S89°54'30"W. 100.00 feet: thence N0°05'00"E. 50.00 feet to the point of beginning.

Said parcel contains 0.23 acres. subject to easements and restrictions of record.

Legal Description - 20' Ingress - Egress to Lease Area

Part of the Northwest Quarter of the Northwest Quarter of Section 5. Township 83 North. Range 6 West of the 5th Principal Meridian. Marion. Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5. Township 83 North. Range 6 West of the 5th Principal Meridian: thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5. 1485.00 feet to the point of beginning: thence N89°45'45"E. 336.47 feet: thence S2°25'45"E. 75.66 feet: thence N89°45'45"E. 200.00 feet: thence N54°57'20"E. 179.82 feet.



SCHEDULE
EXHIBIT __A__

DOCUMENT NO. 34734

**EASEMENT AGREEMENT** RECORDING FEE 15.00

AUTOMATION FEE 1.00

BOOK 3181 PAGE 487

WHEREAS, Virgil F. Johnson and Lorice M. Johnson, (hereinafter referred to as "Grantors"), are the owners of certain real estate more particularly described on Exhibit "A" attached hereto and incorporated herein by reference, and;

WHEREAS, Centel Cellular Company of Iowa, (hereinafter referred to as "Grantee"), has entered into a certain Option and Land Sublease Agreement dated February 13, 1995 by and between Dennis Johnson and Grantee for the lease of certain real property as is more particularly referenced in a certain **MEMORANDUM OF LEASE AGREEMENT** dated March 29, 1995 filed of record on April 13, 1995 in Book 3172 at Page 168 of the records of the Linn County Recorder's Office, ("Benefited Property") and;

WHEREAS, the Grantors have agreed, in consideration of the sum of $1.00 and other valuable consideration, the receipt of which is hereby acknowledged, to grant to the Grantee a non-exclusive easement over a portion of the Grantors' real property for the purpose of permitting the Grantee and the Grantee's agents ingress and egress to that real property which is the subject matter of the aforementioned February 13, 1995 lease agreement by and between Dennis Johnson and Grantee.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, it is agreed by and between Grantors and Grantee as follows:

1) Grantors hereby grant to Grantee for the non-exclusive use by Grantee and the Grantee's employees, agents, invitees, designates, licensees, assigns and successor(s)-in-interest, if any, an Easement for the purpose of ingress, egress and regress over the property described on Exhibit "A" attached hereto and made a part hereof, as may be required for the purpose of construction and maintenance of a tower, building, equipment and other necessary appurtenances on the Benefited Property.

2) Grantors further agree and covenant that they shall erect no buildings, obstructions or any other improvements and shall not plant trees, shrubbery or foliage which would interfere in any way with the construction, reconstruction, maintenance or use of said easement described in paragraph one above.

3) The easement term shall commence on April 1, 1995 and shall continue for the duration of the Option and Land Sublease Agreement dated February 13, 1995.

4) This agreement shall be binding upon the Grantors and their successors-in-interest, assigns and heirs and shall inure to the benefit of Grantee and the Grantee's assigns and successor(s)-in-interest, if any. The Easement shall run with and be

BOOK 3181 PAGE 488

appurtenant to the Benefited Property incorporated herein by reference.

DATED this 5th day of _____May_____, 1995.

_____
Virgil F. Johnson

_____
Lorice M. Johnson

STATE OF IOWA )
) ss.
COUNTY OF LINN )

On this 5th day of _____May_____, 1995, before me, the undersigned, a Notary Public in and for the State of Iowa, personally appeared Virgil F. Johnson, to me known to be the person named in and who executed the foregoing instrument, and acknowledged that he executed the same as his voluntary act and deed.

_____
Notary Public in and for the
State of Iowa

STATE OF IOWA )
) ss.
COUNTY OF LINN )

On this 5th day of _____May_____, 1995, before me, the undersigned, a Notary Public in and for the State of Iowa, personally appeared Lorice M. Johnson, to me known to be the person named in and who executed the foregoing instrument, and acknowledged that she executed the same as her voluntary act and deed.

_____
Notary Public in and for the
State of Iowa

-2-

Legal Description - 20' Ingress - Egress Easement

BOOK 3181 PAGE 489

Part of the Northwest Quarter of the Northwest Quarter of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian, Marion, Iowa located 10 feet each side of the following described centerline:

Commencing at the West Quarter Corner of Section 5, Township 83 North, Range 6 West of the 5th Principal Meridian; thence N0°00'00"E along the west line of the Northwest Quarter of said Section 5, 1484.00 feet to the point of beginning; thence N90°00'00"E, 336.59 feet; thence S2°57'45"E, 65.93 feet; thence N87°19'55"E, 224.80 feet; thence N54°57'20"E, 150.28 feet.

EXHIBIT "A"

FILED FOR RECORD

MAY 0 9 1995

8:25 AM

Eugene F. Hank

RECORDER LINN CO., IOWA



SCHEDULE
EXHIBIT
B



VB Acquisitions, LLC
c/o Vertical Bridge REIT, LLC
22 W Atlantic Ave, Suite 310
Delray Beach, FL 33444
Phone: (214) 227-9805
Email: welcomeletter@verticalbridge.com

July 7, 2025

RE:    **VB Site Name:**
       **VB Site ID:**
       **Site Address:**                     (the "<u>Site</u>")

Dear

VB Acquisitions, LLC ("<u>Vertical Bridge</u>"), or one of its affiliates, recently entered into an agreement with Cellco Partnership d/b/a Verizon Wireless and its affiliates ("Verizon") to exclusively lease, operate and manage the Site, including a communications facility located thereon. Vertical Bridge and Verizon are parties to a transition services agreement whereby Verizon shall make all ground payments on Vertical Bridge's behalf, until August 1, 2025, at which time Vertical Bridge shall assume all payment obligations.

Please provide the information requested below and enclosed so we can update your information in our records. You can return the below forms in the provided envelope or email to welcomeletter@verticalbridge.com.

- **Electronic Payment Form:** Our electronic fund transfer (EFT) information and authorization form for you to complete and return to us. This enables us to pay your rent via electronic deposit directly to your bank account, eliminating mail delays or loss.
- **Vertical Bridge Information Form:** A form for you to return to us with your contact names, email addresses, phone numbers, etc.
- **IRS Form W-9:** A blank W-9 form for you to return to us with your tax identification number for the required Form 1099 filings with the IRS. Please remember that the name on the W-9 must agree with the name on the rent checks we will send to you. In addition, if there are multiple payees, you must return separate W-9 forms for each payee unless they are married individuals filing joint tax returns.

Additionally, this letter shall serve as official written notice pursuant to the lease for the Site that, effectively immediately, all written notices and correspondence should be sent to:

VB Acquisitions, LLC
c/o Vertical Bridge REIT, LLC
22 W Atlantic Ave, Suite 310
Delray Beach, Florida 33444
Attention: General Counsel
Ref: US-CA-7884

Please note that Vertical Bridge treats its ground leases (and the terms contained therein) with its landlords as confidential and proprietary and expects that you will not disclose the terms with anyone without Vertical Bridge's prior consent.

Visit our website at www.VerticalBridge.com for more information about our company. If you have any questions or concerns about this notice, you can reach us by phone at (214) 227-9805 or by email at welcomeletter@verticalbridge.com Additionally enclosed is a magnet with a QR code that will take you directly to our landlord resources page. There you will find up to date forms, a map with up-to-date contact information for the asset manager assigned to your Site and additional information.

Thank you and we look forward to working with you.

Sincerely,

Vertical Bridge

IN THE IOWA DISTRICT COURT FOR LINN COUNTY

| | |
|---|---|
| DENNIS JOHNSON | |
| Plaintiff | 06571  SCSC281043 |
| VS | **ORDER** |
| VB ACQUISITIONS LLC<br>VERTICAL BRIDGE | |
| Defendant | |

This matter comes before the Court sua sponte for further review on the Application to Appear Remotely, in light of the Iowa Rules of Procedure.

The Court, having re-reviewed the motion and applicable law, hereby denies the motion. Plaintiff's motion fails to comply with the mandatory requirements of Iowa R. Remote P. 15.302(2). The motion contains no certification regarding communication with the opposing party.

IT IS THEREFORE ORDERED that defense counsel's Motion to Appear Remotely is DENIED. The scheduled hearing shall proceed as an in-person proceeding unless a compliant motion is timely filed and granted.

If you need assistance to participate in court due to a disability, call the disability coordinator at (319) 398-3920 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**



State of Iowa Courts

**Case Number**          **Case Title**
SCSC281043          DENNIS JOHNSON V VB ACQUISITIONS LLC
**Type:**          Other Order

So Ordered

Kristin L.D. Schneider, District Associate Judge
Sixth Judicial District of Iowa

Electronically signed on 2025-10-13 15:31:21